2013-1158, -1172, -1173, -1174

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

FINE FURNITURE (SHANGHAI) LIMITED, GREAT WOOD (TONGHUA) LTD., and FINE FURNITURE PLANTATION (SHISHOU) LTD.,

Plaintiff-Appellant,

and

BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD., RIVERSIDE PLYWOOD CORPORATION, SAMLING ELEGANT LIVING TRADING (LABUAN) LIMITED, SAMLING GLOBAL USA, INC., SAMLING RIVERSIDE CO., LTD., SUZHOU TIMES FLOORING CO., LTD., SHANGHAI ESWELL TIMBER CO., LTD., SHANGHAI LAIRUNDE WOOD CO., LTD., SHANGHAI NEW SIHE WOOD CO., LTD., SHANGHAI SHENLIN CORPORATION, VICWOOD INDUSTRY (SUZHOU) CO., LTD., XUZHOU SHENHE WOOD CO., LTD., and A&W (SHANGHAI) WOODS CO., LTD.,

Plaintiff-Appellants,

and

CHANGZHOU HAWD FLOORING CO., LTD., DUNHUA CITY JISEN WOOD INDUSTRY CO., LTD., DUNHUA CITY DEXIN WOOD INDUSTRY CO., LTD., DALIAN HUILONG WOODEN PRODUCTS CO., LTD., KUNSHAN YINGYI-NATURE WOOD INDUSTRY CO., LTD., and KARLY WOOD PRODUCT LIMITED,

Plaintiff-Appellants,

and

HUNCHUN FOREST WOLF INDUSTRY CO., LTD., NANJING MINGLIN WOODEN INDUSTRY CO., LTD., DALIAN PENGHONG FLOOR PRODUCTS CO., LTD., DONGTAI FUAN UNIVERSAL DYNAMICS, LLC, ZHEJIANG FUDELI TIMBER INDUSTRY CO., LTD., FUSONG QIANQIU WOODEN PRODUCT CO., LTD., POWER DEKOR GROUP CO., LTD., JIAFENG WOOD (SUZHOU) CO., LTD., JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., SHENYANG HAOBAINIAN WOODEN CO., LTD., GUANGZHOU PAN YU KANG DA BOARD CO., LTD., NAKAHIRO JYOU SEI FURNITURE (DALIAN) CO., LTD., YIXING LION-KING TIMBER INDUSTRY CO., LTD., GUANGZHOU PANYU SOUTHERNSTAR CO., LTD., DALIAN KEMIAN WOOD INDUSTRY CO., LTD., FU LIK TIMBER (HK) COMPANY, LTD., PULI TRADING LTD., ZHEJIANG SHIYOU TIMBER CO., LTD., SHANGHAI LIZHONG WOOD PRODUCTS CO., LTD., and

SHENZHENSHI HUANWEI WOODS CO., LTD.,
Plaintiff-Appellants,
and
THE BUREAU OF FAIR TRADE FOR IMPORTS & EXPORTS, MINISTRY OF
COMMERCE, PEOPLE'S REPUBLIC OF CHINA,
Plaintiff,
v.
UNITED STATES
Defendant-Appellee,
and
THE COALITION FOR AMERICAN HARDWOOD PARITY,
Defendant-Appellee.

---

Appeals from the United States Court of International Trade in
consolidated case no. 11-CV-0533, Chief Judge Donald C. Pogue.

---

**JOINT BRIEF OF**
**PLAINTIFF-APPELLANT FINE FURNITURE (SHANGHAI) LIMITED,**
**GREAT WOOD (TONGHUA) LTD., and FINE FURNITURE**
**PLANTATION (SHISHOU) LTD.,**
**and**
**PLAINTIFF-APPELLANTS BAROQUE TIMBER INDUSTRIES**
**(ZHONGSHAN) CO., LTD., RIVERSIDE PLYWOOD CORPORATION,**
**SAMLING ELEGANT LIVING TRADING (LABUAN) LIMITED,**
**SAMLING GLOBAL USA, INC., SAMLING RIVERSIDE CO., LTD.,**
**SUZHOU TIMES FLOORING CO., LTD., SHANGHAI ESWELL TIMBER**
**CO., LTD., SHANGHAI LAIRUNDE WOOD CO., LTD., SHANGHAI NEW**
**SIHE WOOD CO., LTD., SHANGHAI SHENLIN CORPORATION,**
**VICWOOD INDUSTRY (SUZHOU) CO., LTD., XUZHOU  SHENGHE**
**WOOD CO., LTD., and A&W (SHANGHAI) WOODS CO., LTD.,**
**and**
**PLAINTIFF-APPELLANTS CHANGZHOU HAWD FLOORING CO.,**
**LTD., DUNHUA CITY JISEN WOOD INDUSTRY CO., LTD., DUNHUA**
**CITY DEXIN WOOD INDUSTRY CO., LTD., DALIAN HUILONG**
**WOODEN PRODUCTS CO., LTD., KUNSHAN YINGYI-NATURE WOOD**
**INDUSTRY CO., LTD., and KARLY WOOD PRODUCT LIMITED**

Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Susan Lehman Brooks
Sarah M. Wyss
Mowry & Grimson, PLLC
5335 Wisconsin Ave., NW, Ste. 810
Washington, DC 20015
Tel: (202) 688-3610
*Counsel to Fine Furniture
Shanghai) Limited, Great Wood
(Tonghua) Ltd., and Fine Furniture
Plantation (Shishou) Ltd.*

Francis J. Sailer
Mark E. Pardo
Andrew T. Schutz
Grunfeld Desiderio Lebowitz
Silverman & Klestadt, LLP
1201 New York Ave., NW. Ste. 650
Washington, DC 20005
Tel: (202) 783-6881
*Counsel to Baroque Timber
Industries (Zhongshan) Co., Ltd.,
Riverside Plywood Corporation,
Samling Elegant Living Trading
(Labuan) Limited, Samling Global
USA, Inc., Samling Riverside Co.,
Ltd., Suzhou Times Flooring Co.,
Ltd., Shanghai Eswell Timber, Co.
Ltd., Shanghai Lairunde Wood Co.,
Ltd., Shanghai New Sihe Wood Co.,
Ltd., Shanghai Shenlin Corporation,
Vicwood Industry (Suzhou) Co. Ltd.,
Xuzhou Shenghe Wood Co., Ltd., and
A&W (Shanghai) Woods Co., Ltd.*

Gregory S. Menegaz
DeKieffer & Horgan
729 Fifteenth Street, NW., Ste. 800
Washington, DC 20005-2105
Tel: (202) 783-6900
*Counsel to Changzhou Hawd*
*Flooring Co., Ltd., Dunhua City*
*Jisen Wood Industry Co., Ltd.,*
*Dunhua City Dexin Wood Industry*
*Co., Ltd., Dalian Huilong Wooden*
*Products Co., Ltd., Kunshan Yingyi-*
*Nature Wood Industry Co., Ltd, and*
*Karly Wood Product Limited*

March 15, 2013

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Fine Furniture (Shanghai) v. United States

No. 2013-1158, -1172, -1173, -1174

# CERTIFICATE OF INTEREST

Counsel for the appellant Fine Furniture (Shanghai) Limited, Great Wood (Tonghua) Ltd., and Fine Furniture Plantation (Shishou) Ltd. certifies the following (use "None" if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

Fine Furniture (Shanghai) Limited, Great Wood (Tonghua) Ltd., and Fine Furniture Plantation (Shishou) Ltd.

_____

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Same as #1.

_____

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

_____

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Mowry & Grimson, PLLC (Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer, Susan Lehman Brooks, Sarah M. Wyss and Keith F. Huffman).

_____

_____3/15/2013_____          _____/s/ Kristin H. Mowry_____
Date                                Signature of counsel

                                   _____Kristin H. Mowry_____
                                   Printed name of counsel

Please Note: All questions must be answered
cc: _____

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

FINE FURNITURE (SHANGHAI) V US, 2013-1158, -1172, -1173, -1174

## CERTIFICATE OF INTEREST

Pursuant to Rule 47.4 of the Rules of the U.S. Court of Appeals for the Federal Circuit, Francis J. Sailer counsel for see attached list , certifies the following:

1.      The full name of every party or *amicus* represented by me is:

See attached list.____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest)

Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or *amicus curiae* represented by me are:

Baroque Timber Industries (Zhongshan) Co., Ltd., Riverside Plywood Corporation, Samling Elegant Living Trading (Labuan) Limited, Samling Global USA Inc., Samling Riverside Co., Ltd. and Suzhou Times Flooring Co., Ltd. are all affiliated with Samling Global Limited, a company listed on the Hong Kong stock exchange. The parties also are affiliated with Lingui Developments Berhad and Glenealy Plantations (Malaya) Berhad, both of which are listed on the Malaysian stock exchange.

For all other parties represented by our firm in this case, this question is not applicable.

4.      The names of all law firms and the partners or associates that have appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

- 

Francis J. Sailer, Mark E. Pardo, Andrew T. Schutz, and Kavita Mohan of the law firm Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (GDLSK) appeared in the trial court below and Francis J. Sailer, Mark E. Pardo, Andrew T. Schutz, and Kavita Mohan of GDLSK are expected to appear in this court.

Date: March 15, 2013             /s/Francis J. Sailer_____
                                 Francis J. Sailer
                                 Counsel for Plaintiffs-Appellants

**Addendum to Certificate of Interest**
**List of Companies Represented by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt**

BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD.

RIVERSIDE PLYWOOD CORPORATION

SAMLING ELEGANT LIVING TRADING (LABUAN) LIMITED

SAMLING GLOBAL USA, INC.

SAMLING RIVERSIDE CO., LTD.

SUZHOU TIMES FLOORING CO., LTD.

SHANGHAI ESWELL TIMBER CO., LTD.

SHANGHAI LAIRUNDE WOOD CO., LTD.

SHANGHAI NEW SIHE WOOD CO., LTD.

SHANGHAI SHENLIN CORPORATION

VICWOOD INDUSTRY (SUZHOU) CO., LTD.,

XUZHOU SHENGHE WOOD CO., LTD.

A&W (SHANGHAI) WOODS CO., LTD.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

<u>Fine Furniture (Shanghai)</u> v. <u>United States</u>

No. <u>2013-1158, -1172, -1173, -1174</u>

## CERTIFICATE OF INTEREST

Counsel for the appellant <u>Gregory S. Menegaz</u> certifies the following (use "None" if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

See attached list.

_____

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

The parties listed under no. 1 above are the real parties in interest.

_____

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

_____

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Gregory S. Menegaz, J. Kevin Horgan, DEKIEFFER & HORGAN, 729 15th St. NW, Suite 800, Washington, DC 20005

_____

_____March 15, 2013_____          _____ /s/ Gregory S. Menegaz _____
            Date                                   Signature of counsel

                                  _____ Gregory S. Menegaz _____
                                    Printed name of counsel

Please Note: All questions must be answered

cc: _____

## Addendum to Certificate of Interest
### List of Companies Represented by DEKIEFFER & HORGAN

Dunhua City Dexin Wood Industry Co., Ltd.

Changzhou Hawd Flooring Co., Ltd.

Dalian Huilong Wooden Products Co., Ltd.

Dunhua City Jisen Wood Industry Co., Ltd.

Karly Wood Product Limited

Kunshan Yingyi-Nature Wood Industry Co., Ltd.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF RELATED CASES .......................................................... 1

JURISDICTIONAL STATEMENT ............................................................... 1

STATEMENT OF ISSUE .............................................................................. 2

STATEMENT OF THE CASE ....................................................................... 2

STATEMENT OF FACTS .............................................................................. 4

SUMMARY OF ARGUMENT ...................................................................... 8

ARGUMENT ................................................................................................ 10

   II.  Standard of Review .............................................................................. 10

   III. Commerce's Use of Adverse Inferences Against Fine Furniture Is  Not

       Permitted by 19 U.S.C. §1677e and Is, Therefore, Ultra Vires .......... 12

      A.     Commerce Cannot Use AFA Against a Party Unless It Makes a

             Finding of Non-Cooperation as to That Party ............................. 13

      B.     Commerce Used AFA Against Fine Furniture, a Cooperative

             Party ............................................................................................. 16

i

C.    Collateral Impact of AFA on Fine Furniture Is Not Permitted by the Act ........................................................................24

D.    Commerce's Use of AFA Is Contrary to the Purposes of the Act ........................................................................................28

E.    Even if AFA Were Proper to Determine Financial Contribution and Specificity, It Was Improper as to Benefit ...........................33

F.    The Court Should Give Full Effect to the Plain Language of the Act Governing AFA Regardless of the Impact ...........................36

II.  Commerce Should Have Used Neutral Facts Under Section 1677e(a) to Calculate the Subsidy Rate for the Electricity Program .................40

CONCLUSION.............................................................................47

# TABLE OF AUTHORITIES

## Cases

Agro Dutch Indus., Ltd. v. United States, 508 F.3d 1024 (Fed. Cir. 2007) ............10

Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367 (Fed. Cir. 2012) ............................................................................................25, 31

Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837 (1984) ....passim

Dorbest Ltd. v. United States, 604 F.3d 1363 (Fed. Cir. 2010)..............................36

East Sea Seafoods LLC Y. United States, 703 F. Supp. 2d 1336 (Ct. Int'l Trade 2010) ..............................................................................................................15

Essar Steel Ltd. v. United States, 721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010)......43

Essar Steel Ltd. v. United States, 678 F.3d 1268 (Fed. Cir. 2012)...................15, 43

F. Lli Di Cecco De Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027 (Fed. Cir. 2000)..........................................................................................passim

Fine Furniture (Shanghai) Ltd. v. United States, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) ....................................................................................................passim

Fine Furniture (Shanghai) Ltd. v. United States, 878 F. Supp. 2d 1328 (Ct. Int'l Trade 2012) .......................................................................................................3

Gallant Ocean (Thail.) Co. v. United States, 602 F. 3d. 1319 (Fed. Cir. 2010)......19

GPX Int'l Tire Corp. v. United States, 2013 Ct. Intl. Trade LEXIS 2 (Ct. Int'l 2013) ...............................................................................................................37

GPX Int'l Tire Corp. v. United States, 666 F.3d 732 (Fed. Cir. 2011) ...................38

GPX Int'l Tire Corp. v. United States, 678 F.3d 1308 (Fed. Cir. 2012).................36

In re Compagnie Generale Maritime, 993 F.2d 841 (Fed. Cir. 1993)....................11

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573 (2010) ...................................................................................................38

Killip v. Office of Personnel Management, 991 F.2d 1564 (Fed. Cir. 1993)..........11

KYD, Inc. v. United States, 704 F. Supp. 2d 1323 (Ct. Int'l Trade 2010)..............27

Lorillard v. Pons, 434 U.S. 575 (1978)..................................................................38

Maclean-Fogg Co. v. United States, 836 F. Supp. 2d 1367 (Ct. Int'l Trade 2012) ...............................................................................................22, 30, 46

MCI Telecomms. Corp. v. AT&T Co., 512 U.S. 218 (1994)..................................20

Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29 (1983) ........................................................................29

Nippon Steel Corp. v. United States, 337 F.3d 1373 (Fed. Cir. 2003) ...............................................................................................14, 22, 27, 40

NSK Ltd. v. United States, 217 F. Supp. 2d 1291 (Ct. Int'l Trade 2002) .........10, 11

Pac Fung Feather Co. v. United States, 911 F. Supp. 529 (1995) ..........................11

PAM, S.p.A. v. United States, 582 F.3d 1336 (Fed. Cir. 2009) ..............................12

Shantou Red Garden Foodstuff Co. v. United States, 815 F. Supp. 2d 1311 (Ct. Int'l Trade 2012) ................................................................................41

SKF USA Inc. v. United States, 675 F. Supp. 2d. 1264 (Ct. Int'l Trade 2009) ...............................................................................................18, 27, 37

Tianjin Magnesium Int'l Co. v. United States, 2011 Ct. Intl. Trade LEXIS 100 (Ct. Int'l Trade 2011) ................................................................................26

Wheatland Tube Co. v. United States, 495 F.3d 1355 (Fed. Cir. 2007)...........11, 28

Zhejiang Dunan Hetian Metal Co. v. United States, 652 F.3d 1333 (Fed. Cir. 2011) ...............................................................................................4, 14, 37

**Statutes**

19 U.S.C. § 1677e(a)........................................................................passim

19 U.S.C. §1677e(b) ........................................................................passim

28 U.S.C. § 1295(a)(5)...............................................................................1

28 U.S.C. § 1581(c) ...................................................................................1

Pub. L. No. 112-99, 126 Stat. 265-66 (2012). ........................................37

**Other Authorities**

Statement of Administrative Action, accompanying H.R. Rep. No. 103-826(I), reprinted in 1994 U.S.C.C.A.N. 4040, 4198................................................32, 40

**Agency Proceedings**

Certain Frozen Warmwater Shrimp From Thailand: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review, 73 Fed. Reg. 50,933 (Dep't Commerce Aug. 29, 2008) ........................................................................15

Countervailing Duties, 63 Fed. Reg. 65,348 (Dep't Commerce Nov. 25, 1998) (final rule) ........................................................................46

Drawn Stainless Steel Sinks From the People's Republic of China: Final Affirmative Countervailing Duty Determination, 78 Fed. Reg. 13,017 (Dep't Commerce Feb. 26, 2013)........................................................................45

Drill Pipe From the People's Republic of China: Final Affirmative Countervailing Duty Determination, Final Affirmative Critical Circumstances Determination, 76 Fed. Reg. 1,971 (Dep't Commerce Jan. 11, 2011) ........................................30

Final Determination in the Antidumping Duty Investigation of Certain Polyester Staple Fiber from the Republic of Korea, 65 Fed. Reg. 16,880 (Dep't Commerce Mar. 30, 2000)........................................................................42

High Pressure Steel Cylinders From the People's Republic of China: Final Affirmative CVD Determination, 77 Fed. Reg. 26,738 (Dep't Commerce May 7,

v

2012) ...........................................................................................................29

Initiation of Countervailing Duty Investigation: Multilayered Wood Flooring from
the People's Republic of China, 75 Fed. Reg. 70,719 (Dep't Commerce Nov. 18,
2010) .............................................................................................................4

Lightweight Thermal Paper From the People's Republic of China: Final
Affirmative Countervailing Duty Determination, 73 Fed. Reg. 57,323 (Dep't
Commerce Oct. 2, 2008)...............................................................................42

Multilayered Wood Flooring From the People's Republic of China: Final
Affirmative Countervailing Duty Determination, 76 Fed. Reg. 64,313 (Dep't
Commerce Oct. 18, 2011)........................................................................passim

Multilayered Wood Flooring From the People's Republic of China: Final
Determination of Sales at Less Than Fair Value, 76 Fed. Reg. 64,318 (Dep't
Commerce Oct. 18, 2011)..............................................................................26

Notice of Final Results and Partial Recission of Antidumping Duty Administrative
Review: Roller Chain, Other Than Bicycle, From Japan, 62 Fed. Reg. 60,472
(Dep't Commerce 1997)................................................................................41

## Regulations

19 C.F.R. § 351.511(a)(2) (2012) ........................................................................45

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action was previously before the U.S. Court of Appeals for the Federal Circuit or any other appellate court. This appeal consolidates the separate appeals filed by Plaintiff-Appellant Fine Furniture (Shanghai) Limited, Great Wood (Tonghua) Ltd., and Fine Furniture Plantation (Shishou) Ltd. ("Fine Furniture") and the cases filed by appellants in Case Nos. 2013-1172, 2013-1173 and 2013-1174. No other appeal is pending in this or any other court that will directly affect this Court's decision on appeal.

## JURISDICTIONAL STATEMENT

This action is an appeal from the final judgment of the Court of International Trade ("CIT") in <u>Fine Furniture (Shanghai) Limited v. United States</u>, No. 11-00533, Slip-Op 12-138 (Nov. 15, 2012), published at 878 F. Supp. 2d 1328 (Ct. Int'l Trade 2012) (JA000013 - JA000014).[1] The CIT had jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012), which gives that court exclusive jurisdiction over "any civil action commenced under section 516A of the Tariff Act of 1930." The Court of Appeals for the Federal Circuit has jurisdiction to review decisions of the CIT pursuant to 28 U.S.C. § 1295(a)(5). This appeal is from a final judgment that

---

[1]    Citations to the joint appendix are in the format "JA" followed by the specific number shown on the bottom of the relevant page of the record, *i.e.*, the first page of the Required Section of the Joint Appendix is stamped JA000001 and the citation to that page would be "JA000001."

disposes of all parties' claims.[2]

This appeal by Fine Furniture was timely filed pursuant to 28 U.S.C. § 2107(b) and Fed. R. App. P. 4(a)(1)(B) because Fine Furniture filed its notice of appeal on January 11, 2013, within 60 days of the CIT's November 15, 2012 final judgment.

## STATEMENT OF ISSUE

Whether the use of adverse facts available ("AFA") by the U.S. Department of Commerce ("Commerce") pursuant to 19 U.S.C. §§ 1677e(a) and (b), against Fine Furniture, a fully cooperative company, is <u>ultra vires</u> and unsupported by substantial evidence on the record or otherwise not in accordance with law.

## STATEMENT OF THE CASE

This is an appeal from the decision of the CIT affirming Commerce's final affirmative countervailing duty ("CVD") determination in the investigation of multilayered wood flooring ("MLWF") from the People's Republic of China ("PRC") and arising out of Commerce's use of AFA against Fine Furniture in that

---

[2] Count 1 of Fine Furniture's complaint in the underlying case below, regarding the concurrent application of antidumping and countervailing duties in a non-market economy case, was severed from <u>Fine Furniture v. United States</u>, CIT Case No. 11-00533, and consolidated under <u>Lumber Liquidators v. United States</u>, CIT Case No. 12-00011, where it remains pending.

final determination.  See Fine Furniture (Shanghai) Ltd. v. United States, 878 F.

Supp. 2d 1328 (Ct. Int'l Trade 2012) ("Fine Furniture II") (JA000013) (affirming

Commerce's final determination after remand pursuant to Fine Furniture

(Shanghai) Ltd. v. United States, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012)

("Fine Furniture I") (JA000001))[3]; see also Multilayered Wood Flooring From the

People's Republic of China: Final Affirmative Countervailing Duty Determination,

76 Fed. Reg. 64,313 (Dep't Commerce Oct. 18, 2011) ("Final Determination").

Under sections 776(a) and (b) of the Tariff Act of 1930, as amended (the

"Act"), if Commerce finds that "necessary information is not available on the

record," and if Commerce "finds that an interested party has failed to cooperate by

not acting to the best of its ability to comply with a request for information,"

Commerce "may use an inference that is adverse to the interests of that party in

selecting from among the facts otherwise available."  19 U.S.C. §§ 1677e(a), (b)

(emphasis added).  This appeal challenges Commerce's application of 19 U.S.C.

---

[3] In Fine Furniture I, the CIT affirmed Commerce's decision to use AFA in
the Electricity Program but remanded the case to Commerce to review its inclusion
of respondents Elegant Living and Eswell Enterprises on the AFA list.  Fine
Furniture I, 865 F. Supp. 2d at 1269 (JA000011).  On remand, Commerce removed
Elegant Living and Eswell Enterprises from the AFA list and the CIT affirmed that
remand redetermination and issued a final judgment in the case in Fine Furniture
II.  Fine Furniture II, 878 F. Supp. 2d at 1328 (JA000013).

§§ 1677e(a) and (b) where the foreign government respondent, here the government of China ("GOC"), fails to cooperate with one aspect of Commerce's investigation but the exporter-respondent is fully cooperative. As this Court has unequivocally held, Commerce may "'use an inference that is adverse to the interests of {a respondent}…' <u>only if</u> Commerce makes the separate determination that <u>the {same} respondent</u> 'has failed to cooperate by not acting to the best of its ability to comply.'" <u>Zhejiang Dunan Hetian Metal Co. v. United States</u>, 652 F.3d 1333, 1346 (Fed. Cir. 2011) (quoting 19 U.S.C. § 1677e(b)) (emphasis added). Despite the plain language of the Act that limits Commerce's authority to use adverse inferences only against "that {non-cooperative} party," and despite the undisputed fact that Fine Furniture was fully cooperative in the investigation, Commerce used AFA in the calculation of Fine Furniture's CVD rate. The CIT affirmed Commerce's use of AFA on the grounds that Commerce used AFA against the GOC, not Fine Furniture. <u>Fine Furniture I</u>, 865 F. Supp. 2d at 1254 (JA000006).

## STATEMENT OF FACTS

Commerce initiated the countervailing investigation of MLWF from the PRC on November 18, 2010. <u>Initiation of Countervailing Duty Investigation: Multilayered Wood Flooring from the People's Republic of China</u>, 75 Fed. Reg.

4

70,719 (Dep't Commerce Nov. 18, 2010).  On December 30, 2010, Commerce selected Fine Furniture as mandatory respondent in the investigation.  See Mem. from Matthew Jordan to Christian Marsh re: Selection of Respondents for the Countervailing Duty Investigation of Multilayered Flooring from the People's Republic of China at 4 (Dec. 30, 2011) (Public Version) (JA100061).  Between January 3, 2011 and May 13, 2011, Commerce issued questionnaires to, and received responses from, Fine Furniture.  Commerce thereafter conducted a verification of Fine Furniture's responses.

On October 18, 2011, Commerce published an affirmative final CVD determination, finding that countervailable subsidies were provided to producers and exporters of MLWF from the PRC.  Final Determination, 75 Fed. Reg. at 64,313.  Commerce assigned Fine Furniture a final CVD rate of 1.50 percent in the final determination.  Id. at 64,315.  The other mandatory respondents received de minimis rates and were excluded from the order.  Id.  Commerce issued a CVD order on December 8, 2011.  Multilayered Wood Flooring From the People's Republic of China: Countervailing Duty Order, 76 Fed. Reg. 76,693 (Dep't Commerce Dec. 8, 2011).

The U.S. CVD law provides that a countervailable subsidy exists when a foreign government provides a specific financial contribution to a party and that

party benefits from the contribution.  See 19 U.S.C. § 1677(5).  One way that a party receives a benefit is through the provision of goods or services at "less than adequate remuneration."    Id. § 1677(5)(E)(iv).    In the final determination, Commerce relied on AFA in its determination that the GOC provided electricity for less than adequate remuneration ("Electricity Program").    See Final Determination, 75 Fed. Reg. at 64,315.  Commerce found that the GOC did not provide 2006 and 2008 provincial price proposals that Commerce requested for purposes of understanding the GOC's electricity price adjustment process.  See Mem. from Christian Marsh to Ronald K. Lorentzen re: Issues and Decision Mem. for the Final Determination in the Countervailing Duty Investigation of Multilayered Flooring from the People's Republic of China at 2 (Oct. 11, 2011) (Public Document) ("I&D Mem.") (JA100460).  Based on those missing price proposals, Commerce applied an adverse inference by finding that "the GOC's provision of electricity constitutes a financial contribution…{and} is specific." Id. at 3 (JA100461).  Commerce also applied an adverse inference in measuring the amount of the subsidy in the specific case of Fine Furniture.  Id. (Commerce "relied on an adverse inference when selecting the benchmark for determining the existence and amount of the benefit.").  Specifically, to calculate Fine Furniture's subsidy rate for the Electricity Program, Commerce compared the rates paid by

Fine Furniture during the period of investigation to the highest rates on record across all Chinese provinces within the "Large Industrial User" category.[4] Id. at 14 (JA100472).  Under this methodology, Commerce selected the electricity rates of Zhejiang Province for the Large Industrial User category as the adverse benchmark against which to compare Fine Furniture's peak, middle, and valley usage rates and the electricity rates of Guizhou Province in the Large Industrial User Category as the adverse benchmark against which to compare Fine Furniture's Basic Electricity Tariff.[5] See id. at 45 (JA100503).

Commerce found no deficiencies (or any evidence of non-cooperation) in Fine Furniture's questionnaire responses with regard to the Electricity Program, or any other alleged subsidy program.    See id. at 2-3 (JA100460 - JA100461). Commerce had an array of electricity rates available on the record and deemed

---

[4] Electricity rates in Chinese provinces are determined by the type of user such as "Large Industrial," "Industrial and Commercial," and "Non-residential."

[5] At the CIT, Fine Furniture challenged Commerce's inclusion of the Basic Electricity Tariff on the grounds that Fine Furniture was not given adequate notice and opportunity to comment.    Fine Furniture I, 865 F. Supp. 2d at 1263 (JA000006).  Fine Furniture does not reiterate that procedural challenge here.  Fine Furniture's substantive challenge to the use of AFA in the calculation of the benefit from the Basic Electricity Tariff, however, remains alive as part of the larger challenge to the Electricity Program, of which the Basic Electricity Tariff is one component.

them sufficiently reliable for use as benchmarks for determining Fine Furniture's subsidy.  See id. at 45 (JA100503).  Rather than employing a neutral approach in measuring Fine Furniture's benefit, however, Commerce took a worst-case approach and cherry-picked only the highest rate from any province.  See id.  It was the use of the highest possible rates in measuring Fine Furniture's electricity subsidy that caused Fine Furniture to have a positive, rather than de minimis, CVD rate.  In other words, Commerce's adverse inference against Fine Furniture, based entirely on actions of another party, ensured that Fine Furniture will be subject to the CVD order for years to come.  This result is neither permitted by the statute nor warranted by any reasonable application of the CVD law.

## SUMMARY OF ARGUMENT

Commerce overstepped its statutory authority by using AFA against Fine Furniture in the calculation of its subsidy rate for the Electricity Program.  Under 19 U.S.C. § 1677e(b), Commerce has the authority to use an adverse inference against a party only if Commerce makes a finding that "that party" failed to cooperate in the investigation.  Otherwise, if Commerce finds that there is insufficient information on the record to calculate a CVD rate, Commerce must rely on neutral facts available under 19 U.S.C. § 1677e(a).

During the CVD investigation, Commerce found that the GOC, not Fine

Furniture, failed to cooperate by not providing Commerce with 2006 and 2008 provincial price proposals related to electricity rates in the PRC. Commerce improperly used the missing information as the basis for using AFA. The use of AFA against Fine Furniture was <u>ultra vires</u>, unsupported by substantial evidence and otherwise not in accordance with the law in the following ways: First, Commerce used AFA against Fine Furniture without making a finding that Fine Furniture was non-cooperative and, thus, acted contrary to the plain meaning of section 1677e(b) of the Act. Second, even if Fine Furniture were only collaterally affected by Commerce's use of AFA against the GOC, that use was still unlawful because Fine Furniture had no relation to or control over the GOC's submission. Third, Commerce's use of AFA is flawed because it does not encourage future cooperation by the GOC or Fine Furniture. Fourth, if Commerce's use of AFA was proper at all, it was only as to the financial contribution and specificity determinations and not to the company-specific determination of the benefit to Fine Furniture from the Electricity Program. Fifth, and finally, Commerce's use of AFA is not justified by the potential future impact that a ruling in this case may have on Commerce's AFA methodology. Instead of relying on AFA to calculate a CVD rate for the Electricity Program, Commerce should have relied on neutral facts available. For these reasons, the CIT erred in affirming Commerce's

determination below.  Accordingly, this Court should reverse the CIT's decision with instructions to remand the case to Commerce to eliminate the use of AFA against Fine Furniture.

## ARGUMENT

### I.     Standard of Review

This Court reviews the CIT's decisions "de novo" and, accordingly, will not uphold Commerce's determination if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  NSK Ltd. v. United States, 510 F.3d 1375, 1379 (Fed. Cir. 2007); 19 U.S.C. § 1516a(b)(1)(B)(i).   On questions of law, the Court follows the two-pronged framework established by Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837 (1984).  See Agro Dutch Indus., Ltd. v. United States, 508 F.3d 1024, 1029-1030 (Fed. Cir. 2007).  The first prong requires the Court to determine whether Congress' intent can be ascertained.  If it can, the Court "must give effect to the unambiguously expressed intent of Congress."  Chevron, 467 U.S. at 842-43.

The second prong of Chevron requires the Court to determine whether the agency's interpretation of the statute is reasonable.  See id.  To determine whether Commerce's statutory interpretation is reasonable, the Court considers several factors, including "the express terms of the provisions at issue, the objectives of

those provisions, and the objectives of the {statutory} scheme as a whole." Wheatland Tube Co. v. United States, 495 F.3d 1355, 1361 (Fed. Cir. 2007) (quoting NSK Ltd. v. United States, 217 F. Supp. 2d 1291 (Ct. Int'l Trade 2002)). If Commerce "engages in acts beyond its {statutory} authority, such act{s are} ultra vires and void." In re Compagnie Generale Maritime, 993 F.2d 841, n.2 (Fed. Cir. 1993) (citing Killip v. Office of Personnel Management, 991 F.2d 1564 (Fed. Cir. 1993)); see also Pac Fung Feather Co. v. United States, 911 F. Supp. 529, 534 (Ct. Int'l Trade 1995) (providing that a court will "declare ultra vires and void, agency action that is beyond the scope of its defined statutory authority") (aff'd Pac Fung Feather Co. v. United States, 111 F.3d 114 (Fed. Cir. 1997)).

Under these standards applied in this case, as discussed below, Commerce's final determination must be overturned under the first prong of Chevron because Commerce's use of AFA was contrary to the unambiguously expressed intent of Congress. Even if the Court turns to the second prong of Chevron, it must find that Commerce was unreasonable in using AFA against a cooperative party, Fine Furniture. Under either prong of the Chevron analysis, Commerce's determination is ultra vires because Commerce acted beyond the limits of 19 U.S.C. § 1677e.

11

**II.    Commerce's Use of Adverse Inferences Against Fine Furniture Is Not Permitted by 19 U.S.C. §1677e and Is, Therefore, <u>Ultra Vires</u>**

Sections 776(a) and (b) of the Act, 19 U.S.C. §§ 1677e(a), (b), permit Commerce to use adverse facts available against a party in a CVD investigation if the "necessary information is not available on the record," but only where "<u>that party</u>" "has failed to cooperate."  Although Commerce has considerable discretion to apply AFA, that discretion has limits.  <u>See</u> <u>PAM, S.p.A. v. United States</u>, 582 F.3d 1336, 1340 (Fed. Cir. 2009) ("While the possibility of a high AFA margin creates a powerful incentive to avoid dumping and to cooperate in investigations, there is a limit to Commerce's discretion."); <u>see also</u> <u>F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States</u>, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (stating, in relation to Commerce's use of AFA, that "Commerce's discretion in these matters, however, is not unbounded").

In this case, Commerce went beyond the statutory limitations of section 1677e by erroneously using the GOC's alleged failure to cooperate as justification to penalize Fine Furniture with an AFA subsidy rate even though Fine Furniture was fully cooperative in its own responses to Commerce and had no control over the GOC.  As explained below, this Court should find that Commerce's application of AFA is <u>ultra vires</u>, unreasonable, unsupported by substantial evidence and not in

accordance with law.  Accordingly, this Court should reverse the judgment of the CIT and instruct the CIT to remand the case to Commerce to re-calculate Fine Furniture's rate without using AFA.

### A.    Commerce Cannot Use AFA Against a Party Unless It Makes a Finding of Non-Cooperation as to <u>That Party</u>

Commerce is obligated under the Act to make a finding of non-cooperation before it is permitted to exercise its authority to apply adverse inferences under section 1677e(b).  In particular, before applying AFA, Commerce must make two separate inquiries.  First, it must determine if:

> (1) necessary information is not available on the record, or
> (2) an interested party or any other person
> (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
> (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested…
> (C) significantly impedes a proceeding under this subtitle, or
> (D) provides such information but the information cannot be verified…

19 U.S.C. § 1677e(a).  Second, if <u>and only if</u> Commerce makes a finding of non-cooperation, it may use adverse inferences against <u>that</u> non-cooperative party under 19 U.S.C. § 1677e(b), which provides:

> If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information…the administering authority…in reaching the applicable determination

13

> under this subtitle, may use an inference that is adverse to the interests
> of that party in selecting from among the facts otherwise available.

Id. § 1677e(b) (emphasis added).  There is no uncertainty in this statutory directive and, therefore, the Court should review Commerce's actions under the first prong of Chevron and "give full effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 843-44.

This Court has repeatedly confirmed Commerce's obligation to find non-cooperation by a party prior to using an adverse inference against that party.  See Zhejiang Dunan Hetian Metal Co. v. United States, 652 F.3d 1333, 1346 (Fed. Cir. 2011) ("After Commerce has determined that the use of facts otherwise available is proper, it can use an inference that is adverse to the interests of a respondent in selecting from among the facts otherwise available, only if Commerce makes the separate determination that the respondent has failed to cooperate by not acting to the best of its ability to comply.") (emphasis added) (internal quotations omitted); see also Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381 (Fed. Cir. 2003) ("subsection (b) permits Commerce to 'use an inference that is adverse to the interests of {a respondent} in selecting from among the facts otherwise available,' only if Commerce makes the separate determination that the respondent 'has failed to cooperate by not acting to the best of its ability to comply.'" (quoting 19

14

U.S.C.§ 1677e(b))).[6]  In addition, the CIT has examined the issue and concluded that Commerce's actions may be <u>ultra vires</u> where the agency fails to make a determination of failure to cooperate as required by section 1677e(b).  <u>See, e.g.,</u> <u>East Sea Seafoods LLC Y. United States</u>, 703 F. Supp. 2d 1336, n.15 (Ct. Int'l Trade 2010) (indicating that the application of AFA "without the finding of failure to cooperate required by 1677e(b), may be <u>ultra vires</u>").

Commerce itself has acknowledged that the Act expressly requires Commerce to determine that a party was non-cooperative prior to drawing adverse inferences against that party.  <u>See, e.g.</u>, <u>Certain Frozen Warmwater Shrimp From Thailand: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review,</u> 73 Fed. Reg. 50,933, 50,939 (Dep't Commerce Aug. 29, 2008) (stating that "under section 776(b)... in order for {Commerce} to make an adverse inference with respect to the missing information, we must conclude that {the respondent} 'failed to cooperate by not acting to the best of its ability to comply with a request for information.'").  Further, the CIT below affirmed this

_____

[6] The authority to use AFA in antidumping and countervailing duty proceedings arises out of the same statute, 19 U.S.C. § 1677e.  Thus, past precedent construing section 1677e in the antidumping context is controlling in the CVD context as well.  <u>See, e.g.</u>, <u>Essar Steel Ltd. v. United States</u>, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (using antidumping precedent in a case involving a CVD determination).

basic construction of the Act, stating that "if Commerce finds 'that an interested party has failed to cooperate… {it} may use an inference that is adverse to the interests of that party.'"  Fine Furniture I, 865 F. Supp. 2d at 1260 (internal citations omitted) (JA000004).   As the above decisions demonstrate, the Act unquestionably allows the use of AFA only against non-cooperative parties, and prohibits the use of AFA against cooperative parties such as Fine Furniture.  To permit Commerce to penalize cooperative parties would offend the express terms of the Act and basic tenets of fundamental fairness.

### B.    Commerce Used AFA Against Fine Furniture, a Cooperative Party

The facts regarding Fine Furniture's and the GOC's participation in the investigation are not in dispute.  In the final determination, Commerce found that the GOC did not provide the electricity price proposals for 2006 and 2008 for each province in which a mandatory respondent is located and which Commerce found were necessary to understand the GOC's electricity price adjustment process.  See I&D Mem. at 2 (JA100460).  As to Fine Furniture, however, Commerce made no finding that the company "failed to cooperate by not acting to the best of its ability to comply with a request for information," as required under section 1677e(b) in order to use AFA.  Indeed, it could not because Fine Furniture provided Commerce

16

with all requested information regarding its electricity suppliers, purchases and rates. <u>See</u> CVD Questionnaire Response of Fine Furniture at 23-25 (Feb. 14, 2011) (Public Version) (JA100094 - JA100096); First Supp. CVD Questionnaire Response of Fine Furniture at 3 (Mar. 2, 2011) (Public Version) (JA100356); Second Supp. CVD Questionnaire Response of Fine Furniture at 1 (Mar. 11, 2011) (Public Version) (JA100392). Commerce verified the submitted information as complete and accurate. <u>See</u> Mem. to Susan H. Kuhbach From Shane Subler re: Verification Report: Fine Furniture at 9-10 (July 6, 2011) (Public Version) (JA100403 - JA100404).

Despite clear evidence on the record that Fine Furniture fully cooperated with Commerce's investigation, Commerce used AFA against Fine Furniture in the calculation of Fine Furniture's subsidy rate for the Electricity Program. Commerce applied AFA by finding that "the GOC's provision of electricity constitutes a financial contribution…{and} is specific." <u>I&D Mem.</u> at 3 (JA100461). Commerce also "relied on an adverse inference in selecting the benchmark for determining the existence and amount of the benefit." <u>Id.</u> The benchmark rates were the "highest applicable electricity rates for the user categories reported by the mandatory respondents" related to the three-part use schedule (peak, middle, and valley) and the Basic Electricity Tariff for the Large Industrial User category. <u>Id.</u>

17

Commerce compared Fine Furniture's own electricity rates to this penalty benchmark to arrive at the benefit, and then divided the benefit by the total sales during the period of investigation to get the subsidy rate applicable to Fine Furniture for the Electricity Program. See Mem. from Nancy Decker to Shane Subler re: Final Determ. Calculation Mem. for Fine Furniture at 3 (Oct. 11, 2011) (Public Version) ("Final Calc. Mem.") (JA100441).

By using AFA in its financial contribution, specificity and benefit determinations, Commerce caused Fine Furniture to suffer the effect of the adverse inference in the form of a subsidy rate that was purposefully higher than it would have been without the use of AFA. The CIT has previously examined Commerce's use of AFA against one party based on the actions of another and explained that if a party "suffers the effect of the adverse inference," then Commerce has "applied" an adverse inference to that party under section 1677e(b). See SKF USA Inc. v. United States, 675 F. Supp. 2d. 1264, 1277 (Ct. Int'l Trade 2009) (holding that a court "cannot accept a construction of 19 U.S.C. § l677e(b) under which the party who suffers the effect of the adverse inference is

18

not the party who failed to cooperate").[7]   The application of such an adverse inference is precisely what Commerce did here.[8]   Had Commerce not applied AFA, Fine Furniture would have received a <u>de minimis</u> subsidy rate.   <u>See</u> Final Calc. Mem. at Attachment 1 (Public Version) (JA100445) (showing that if a subsidy rate was not included for the Electricity Program, Fine Furniture's total subsidy rate would have been <u>de minimis</u>).

In addition, Commerce's segregation of the elements of a subsidy allegation (contribution, specificity and benefit) for purposes of applying AFA failed to protect the cooperative party, here Fine Furniture, as dictated by the Act because

---

[7] <u>SKF</u> reviewed Commerce's use of AFA in the calculation of an exporter's antidumping rate based on an unaffiliated supplier's failure to provide cost of production data. <u>See</u> <u>SKF</u>, 675 F. Supp. 2d at 1268.   The CIT found that Commerce acted contrary to law because section 1677e(b) does not allow Commerce to use one "interested party's failure to cooperate to affect adversely the dumping margin of another interested party," and accepted the premise that Commerce in fact used AFA against the cooperative respondent by virtue of including AFA in the calculation of the respondent's final antidumping rate. <u>Id.</u>

[8] Notably, both Commerce, in its final determination, and the United States in its brief at the CIT below, refrained from using the common "AFA rate" terminology.   The phrase "AFA rate," however, provides a more accurate picture of AFA – that it materializes in a single, final adverse rate that should be representative of the respondent's situation.   <u>See, e.g.</u>, <u>Gallant Ocean (Thail.) Co. v. United States</u>, 602 F. 3d. 1319, 1323 (Fed. Cir. 2010) (providing that an "<u>(AFA) rate</u> must be a 'reasonably accurate estimate of a respondent's actual rate….'" (quoting <u>De Cecco</u>, 216 F.3d at 1032)) (emphasis added).

19

Fine Furniture was ultimately assigned an AFA rate. The Coalition for American Hardwood Parity, petitioners in the countervailing duty investigation and Defendant-Appellees before this Court, themselves acknowledged that Commerce applies "adverse facts available <u>against</u> a mandatory respondent when the Government fails to provide the requested information." Def.-Intervenor's Resp. to Pls.' Joint Rule 56.2 Motion for Judgment on the Agency Record at 4, 11 (emphasis added) (JA100008, JA100015). Regardless of which elements (contribution, specificity and benefit) that Commerce claims relate to the GOC and which relate to Fine Furniture, AFA was in fact used <u>against Fine Furniture</u> because adverse inferences were integral in the calculation of Fine Furniture's final rate as explained above.

Commerce's interpretation of section 1677e to permit the application of AFA against a fully cooperative party based on the actions of another party is unlawful because the interpretation goes beyond the plain meaning of the Act. The Supreme Court has held that "an agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear." <u>MCI Telecomms. Corp. v. AT&T Co.</u>, 512 U.S. 218, 229 (1994). In this case, Commerce far exceeds its bounds and cannot be sustained. Commerce attempted to justify its use of AFA, stating that:

20

{S}ection 776(b) permits Commerce…to draw an adverse inference where a party has not cooperated in a proceeding. A party is uncooperative if it has not acted to the best of its ability to comply with requests for necessary information. Where a party has not cooperated, Commerce…may employ adverse inferences ... to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." We determine that the GOC, as a respondent party to this proceeding, failed to cooperate to the best of its ability because it failed to put forth its maximum efforts to obtain the requested information. Accordingly, the Department is applying AFA in determining whether electricity was provided for {less than adequate remuneration}.

I&D Mem. at 44 (JA100502).  This entire discussion focuses on failures of the

GOC.  Commerce's asserted rationale for the use of AFA as articulated in the I&D

Memorandum thus provides support for AFA to be used only against the GOC, a

party unrelated to Fine Furniture, and does not support the use of AFA against Fine

Furniture.    Further, although Commerce claimed at the court below that

Commerce's practice "ensures that the adverse inference is applied only to fill in

data that…is not{} provided by the foreign government {but not} in place of data

provided by a cooperating respondent company," the plain language of the Act

does not allow Commerce to apply adverse inferences only to fill in data that is not

provided by the GOC because Commerce did not reasonably explain how the

inference is adverse only to the GOC.  The Act explicitly states that Commerce

may use AFA only against "that party" who has "failed to cooperate." 19 U.S.C. §

1677e(b).  It is not enough that Commerce used Fine Furniture's actual prices as part of the rate calculation because Commerce compared those prices to an adverse benchmark and thus the inferences were ultimately adverse to Fine Furniture. Under Chevron, the Court "must give effect to the unambiguously expressed intent of Congress."  Chevron, 467 U.S. 837.  The AFA rate assigned to Fine Furniture is thus unlawful under the express terms of the Act and must be overturned by this Court under the first prong of Chevron.

Not only did Commerce use AFA against Fine Furniture, but Commerce used AFA in the extreme by comparing Fine Furniture's actual electricity consumption to the highest possible benchmark.  See I&D Mem. at 3 (JA100461). This kind of extreme use of AFA is prohibited because the AFA rate must reasonably relate to the level of participation of the party who receives the rate. See Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (requiring Commerce to examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation when applying adverse inferences); see also Maclean-Fogg Co. v. United States, 836 F. Supp. 2d 1367, 1376 (Ct. Int'l Trade 2012) (finding that "there is nothing in Commerce's decision which indicates a logical connection between the AFA rate and Commerce's conclusion to apply that rate to the remaining parties" and remanding to Commerce to make a

22

"reasonable decision."); De Cecco, 216 F.3d at 1032 (providing that AFA must be "a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance").  As the above-cited cases demonstrate, when Commerce assigns an AFA rate, that rate must reasonably relate to the level of participation by party who receives the rate, and by extension, therefore, if a party provides a low level of cooperation, Commerce would be justified in assigning a high AFA rate.  Here, Commerce's use of AFA against Fine Furniture is a total perversion of the rule that an AFA rate should bear a logical connection to the party's participation because Fine Furniture provided the highest possible level of cooperation, yet received the highest possible AFA rate in the Electricity Program.  See I&D Mem. at 3 (JA100461) (showing that Commerce used the highest electricity rate on record to calculate Fine Furniture's benefit).

As described above, Commerce used AFA directly against Fine Furniture by assigning the company an AFA rate that was calculated using adverse inferences in all parts of the Electricity Program determination (financial contribution, specificity and benefit).  Because Commerce did in fact use AFA against Fine Furniture, the Court must determine that Commerce's use of AFA is contrary to law because it is undisputed that Fine Furniture itself did not fail to cooperate.

## C.    Collateral Impact of AFA on Fine Furniture Is Not Permitted by the Act

Commerce claimed that it used AFA against the GOC, see I&D Mem. at 2-3 (JA100460 - JA100461), but Commerce erroneously ignored the fact that Fine Furniture, not the GOC, is the only party actually affected by Commerce's use of AFA.  The CIT explained the core of this dispute:

> The dispute between the parties centers on whether the adverse inferences drawn against the non-cooperating party, the GOC, are rendered impermissible when they are collaterally adverse to the cooperating party, Fine Furniture.  Fine Furniture contends that the inferences drawn were impermissibly adverse to Fine Furniture, who was a cooperating party in the investigation.  Commerce, however, argues that it properly employed inferences adverse to the GOC — the non-cooperating party — and that any impact on Fine Furniture was simply collateral, which does not render the inferences impermissible.

Fine Furniture I, 865 F. Supp. 2d at 1261 (JA000004 – JA000005).  The facts, however, undermine any argument that "any impact on Fine Furniture was simply collateral."  Id. (JA000005).  Commerce used AFA against Fine Furniture directly, not merely "collaterally," by determining that there was a specific financial contribution to Fine Furniture from the Electricity Program and by applying the highest-possible electricity benchmark not to the GOC, but to Fine Furniture's actual electricity consumption to determine Fine Furniture's CVD rate.  See Final Calc. Mem. at 3 (Public Version) (JA100441).  Moreover, this Court recently

24

rejected the argument that the use of AFA against cooperating parties is permissible "collateral damage":

> Commerce misses the point when it argues that the appellant cannot complain because it does not bear an AFA rate directly, but only a separate rate derived from the AFA rate, which is only half as adverse. Although the hypothetical AFA rate was not directly applied to a cooperating respondent, cooperating respondents were the only entities impacted by the recalculated rate.

Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367, 1378 (Fed. Cir. 2012). Commerce's attempt to justify its use of AFA against Fine Furniture as indirect is even more egregious than in Changzhou Wujin because Fine Furniture was the only entity impacted by the AFA rate (as opposed to numerous separate rate respondents) and the adverse benchmark was directly compared to Fine Furniture's electricity consumption, whereas in Changzhou Wujin the connection between the AFA rate and the separate rate was more attenuated because the separate rate was an average of numerous rates, including non-AFA rates.

In order to justify one party's AFA as an indirect consequence of another party's failure to cooperate, Commerce must show that the two parties are somehow linked. The CIT has examined the issue of indirect impact of AFA and found that in order to attribute one party's failure to cooperate to a mandatory

respondent, Commerce must affirmatively find that the respondent played an "integral role" in "critical aspects" of the non-cooperative party's submission of information to Commerce.  See Tianjin Magnesium Int'l Co. v. United States, 2011 Ct. Intl. Trade LEXIS 100, Final Results of Redetermination Pursuant to Court Remand Pure Magnesium from the People's Republic of China, CIT Case No. 09-00535, ECF No. 63 at 4 (Dep't Commerce May 12, 2011) (Ct. Int'l Trade 2011).    In addition, "Commerce must link {the respondent} to {the non-cooperative party's} failures, as a matter of fact." Tianjin Magnesium Int'l Co. v. United States, 2011 Ct. Intl. Trade LEXIS 16, *9 (Ct. Int'l Trade 2011).  Fine Furniture, by contrast, did not play an "integral role" in any "critical aspects" of the GOC's submission of information to Commerce over the course of this CVD investigation.   Commerce cannot link Fine Furniture to the GOC, as they are separate entities, a fact established by Commerce's finding of Fine Furniture's independence from the GOC during the parallel MLWF antidumping investigation. See Multilayered Wood Flooring From the People's Republic of China: Final Determination of Sales at Less Than Fair Value, 76 Fed. Reg. 64,318, 64,324 (Dep't Commerce Oct. 18, 2011) (finding Fine Furniture's separate rate application demonstrated an absence of both de jure and de facto government control over its export activities).  Fine Furniture's separate rate status confirms

26

that Fine Furniture is beyond the control of the GOC, but the implication of Commerce's final determination in the MLWF CVD case is the ludicrous assumption that the GOC is subject to the control of Fine Furniture.

In order to calculate the accurate CVD rate to which Fine Furniture is entitled, Commerce must examine Fine Furniture's own cooperation and not the cooperation of unrelated parties.  See Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (requiring Commerce to examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation before applying adverse inferences); see also KYD, Inc. v. United States, 704 F. Supp. 2d 1323, 1334 (Ct. Int'l Trade 2010) (recognizing that "19 U.S.C. § 1675(a) entitles a cooperative party 'to have its margin determined accurately and according to the relevant information on the record of the administrative review'" (quoting SKF, 675 F. Supp. 2d at 1276)).  Because Fine Furniture's own actions were fully cooperative, there is no basis to attribute any alleged failure by the GOC to Fine Furniture.  Fine Furniture is, therefore, entitled to have its CVD rate accurately determined according to the relevant information on the record. Commerce erred by failing to do so.

On this subject, the CIT below "acknowledge{d} that, in the context of a CVD investigation, an inference adverse to the interests of a non-cooperating

27

government respondent may collaterally affect a cooperative respondent. While such an inference is permissible under the statute, it is disfavored and should not be employed when facts not collaterally adverse to a cooperative party are available." Fine Furniture I, 865 F. Supp. 2d at n.10 (JA000006).  The CIT's tacit approval of Commerce's interpretation that a collateral inference is permissible under the Act is not supported by the plain language of the Act.  Neither the government nor the CIT ever explains how the application of AFA to Fine Furniture is permissible under the Act, whether the effect is direct or collateral.

### D.    Commerce's Use of AFA Is Contrary to the Purposes of the Act

When correctly applied, AFA rates should not penalize respondents, but rather create an incentive for respondents to cooperate in the future.  See De Cecco, 216 F.3d at 1032 ("{T}he purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive {rates}.") (emphasis added).  The Court should consider this statutory objective when reviewing Commerce's use of AFA.  See Wheatland Tube Co. v. United States, 495 F.3d 1355, 1361 (Fed. Cir. 2007) (providing that the Court should consider the objectives of a statutory scheme when interpreting it).  In order to show that its use of AFA bears a rational connection to the Act's intended purpose of providing respondents with an incentive to cooperate, Commerce must explain how the AFA

28

rate in this case could compel the GOC and Fine Furniture to cooperate in the future.  See Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29 (1983) (holding that, in order to be sustained, an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made"). Commerce failed to articulate such an explanation.

It is evident from subsequent CVD determinations that Commerce's use of AFA in the MLWF case has not in fact functioned as an incentive for future GOC cooperation with respect to the Electricity Program.  See, e.g., High Pressure Steel Cylinders From the People's Republic of China: Final Affirmative CVD Determination, 77 Fed. Reg. 26,738 (Dep't Commerce May 7, 2012), Issues and Decision Mem. at Cmt. 10. (finding that the GOC failed to provide provincial price proposals related to the Electricity Program in the context of the countervailing duty investigation of high pressure steel cylinders from China); Galvanized Steel Wire From the People's Republic of China: Final Affirmative Countervailing Duty Determination, 77 Fed. Reg. 17,418 (Dep't Commerce Mar. 26, 2012), Issues and Decision Mem. at Section III.  These Chinese CVD cases, among others, were issued after Commerce applied AFA to the Electricity Program in the MLWF case, and yet the GOC still did not provide the requested provincial price proposals

29

related to the Electricity Program in those cases.  Indeed, the GOC was not encouraged to cooperate in the MLWF case by virtue of Commerce's use of AFA in numerous other CVD determinations that pre-dated the MLWF case.  See, e.g., Drill Pipe From the People's Republic of China: Final Affirmative CVD Determination, Final Affirmative Critical Circumstances Determination, 76 Fed. Reg. 1,971, Issues and Decision Mem. at Section V (Dep't Commerce Jan. 11, 2011).  The application of AFA to the GOC has had no apparent effect on the amount of information that the GOC has provided.  In fact, Fine Furniture is not able to find a single case where Commerce has found the GOC's responses on electricity to be fully cooperative – ever.

The GOC does not feel the effect of the AFA rate in this case because the GOC is not assigned a CVD rate.  The GOC, therefore, would not logically be encouraged to cooperate in the future by virtue of the use of AFA against independent exporters.  Absent an explanation as to how the use of AFA against a cooperative respondent could ever encourage future cooperation by a foreign government, Commerce's use of AFA here can only reasonably be viewed as an unallowable punishment.  See De Cecco, 216 F.3d at 1032 (providing the general proposition that that an AFA rate may not be punitive); see also Maclean-Fogg, 836 F. Supp. 2d at 1376 (where the CIT remanded Commerce's calculation of the

all-others rate in the CVD investigation aluminum extrusions from China because "{n}othing on the record…indicates that Commerce considered how to serve {the remedial} purpose in selecting the applicable all-others rate in this case").

Not only does the application of AFA not encourage the GOC to cooperate, it also could not possibly encourage future cooperation by Fine Furniture because Fine Furniture has already cooperated to the best of its ability, and Fine Furniture has no control over or involvement in the GOC's submissions to Commerce. Practically, Commerce's use of AFA against cooperative companies such as Fine Furniture actually creates the exact opposite incentive than was intended by the Act; it <u>discourages</u> future cooperation by sending the message that even if an exporter-respondent cooperates, it still may receive an AFA rate.   Because the use of AFA does not function to encourage Fine Furniture's cooperation, the objective of the Act is not accomplished and Commerce cannot be sustained.   <u>See</u> <u>Changzhou Wujin</u>, 701 F.3d 1367, 1378 (holding that "deterrence is not relevant…where the 'AFA rate' only impacts cooperating respondents," and "applying an adverse rate to cooperating respondents undercuts the cooperation-promoting goal of the AFA statute") .

That the Act permits application of AFA only against the party that failed to cooperate is bolstered by the explanation of section 776(b) in the Statement of

Administrative Action ("SAA"). <u>See</u> Statement of Administrative Action, accompanying H.R. Rep. No. 103-826(I), reprinted in 1994 U.S.C.C.A.N. 4040. According to the SAA:

> new section 776(b) permits Commerce and the Commission to draw an adverse inference where a party has not cooperated in a proceeding. … Where a party has not cooperated, Commerce and the Commission may employ adverse inferences about the missing information to ensure <u>that the party</u> does not obtain a more favorable result by failing to cooperate than if it had cooperated fully. In employing adverse inferences, one factor the agencies will consider is the extent to which a party may benefit from <u>its own lack of cooperation</u>.

SAA at 870 (emphasis supplied). This goal of ensuring that a noncooperative party does not receive a more favorable result through noncooperation would make no sense if Commerce is permitted to apply AFA to a cooperating party. The SAA clearly refers to the parties "own" lack of cooperation – not that of another party. Construing the Act to allow application of AFA to a cooperating party based on the noncooperation of a distinct party would violate the administration's admitted policy goal and fundamental fairness principles. In short, Commerce's use of AFA in the MLWF case was contrary to the underlying purposes of the Act.

32

**E.      Even if AFA Were Proper to Determine Financial Contribution and Specificity, It Was Improper as to Benefit**

Even if Commerce were justified in using AFA in some aspects of the Electricity Program calculation (financial contribution and/or specificity), which are more government-centric inquiries, Commerce did not have the authority to use AFA in the calculation of the benefit specific to Fine Furniture.  See Final Calc. Mem. at 3 (Public Version) (JA100441) (showing that Commerce calculated the company-specific benefit to Fine Furniture by comparing the worst possible benchmark to Fine Furniture's sales).  In the final determination, Commerce stated that the GOC was uncooperative by failing to provide 2006 and 2008 provincial price proposals.  I&D Mem. at 43-44 (JA100501 – JA100502) (noting simply that "the {2006 and 2008 price proposals} are necessary for the Department's analysis of the program").  Commerce also stated generally that "{w}hen the government fails to provide requested information concerning alleged subsidy programs, {Commerce}, as AFA, typically finds that a financial contribution exists under the alleged program and that the program is specific," and that "{c}onsistent with this practice, {Commerce} finds that the GOC's provision of electricity confers a

33

financial contribution…and is specific….” Id. at 14 (JA100472).[9]    These

statements, if anything, only support Commerce's use of AFA to determine

financial contribution and specificity.  They do not support "applying an adverse

inference, and using the highest rates on the record of this proceeding to determine

the benefit to {Fine Furniture}.”  Id. at 44 (JA100502) (emphasis added).

Commerce's use of the missing price proposals (evidence only of the GOC's

actions) as evidence against Fine Furniture, a separate cooperative party, was,

therefore, not in accordance with law.

Commerce's use of AFA in the benefit calculation is particularly

unreasonable because Fine Furniture is disproportionately affected by the use of

AFA in the benefit component of the subsidy finding in comparison to the other

mandatory respondents.  Although Commerce's approach to apply AFA separately

---

[9]    Beyond this statement, however, Commerce made no clear finding of the specificity in the Electricity Program.  Commerce merely referred to the section of the Act that requires a finding of specificity.  "In drawing an adverse inference, we find that the GOC's provision of electricity constitutes a financial contribution within the meaning of section 771(5)(D) of the Act and is specific within the meaning of section 771(5A) of the Act."  I&D Mem. at 3 (JA100465).  There is no analysis of whether it is a regionally specific program, an industry-specific program or any other categorization of specificity.  Although the allegation may have been that the GOC through the program provided regionally specific subsidies, there is no analysis that there is any regional preference.  Even if so, there is ample evidence that the rates paid by Fine Furniture in Shanghai are much higher than those paid by multiple other provinces.

to each component of the subsidy calculation is flawed as explained above, it is arguable that under this approach AFA was applied equally to all mandatory respondents with respect to financial contribution and specificity. With regard to benefit, however, Commerce arbitrarily penalized Fine Furniture with an AFA rate by virtue of its location, Shanghai, while the other two mandatory respondents escaped repercussions because they happen to be located in Zhejiang province, the province Commerce selected as a benchmark. See Final Determination, 76 Fed. Reg. at 64,315. Fine Furniture had no more control over the GOC's responsiveness to Commerce than did the other two mandatory respondents in this case, nor was Fine Furniture's response to Commerce any less complete, timely or responsive than the other mandatory respondents. Despite the equal participation by the mandatory respondents, the adverse benchmark used by Commerce affected Fine Furniture alone, simply because of the company's location on the map. Commerce's singling out of Fine Furniture in this way was unreasonable and cannot be sustained because it was contrary to "{t}he standards of fairness and reasonableness {that} are inherent" in the trade laws. Melamine Chem., Inc. v. United States, 561 F. Supp. 458, 463 (Ct. Int'l Trade 1983).

35

**F.     The Court Should Give Full Effect to the Plain Language of the Act Governing AFA Regardless of the Impact**

The Act is clear that Commerce must find that a party failed to cooperate in order to apply AFA against "that party."   19 U.S.C. § 1677e(b).   Commerce warned that if Fine Furniture's argument is adopted, Commerce "could never apply adverse inferences in a CVD investigation where the government of the country being investigated fails to reply to any of the Department's questionnaires, but the mandatory respondents have supplied certain information."   I&D Mem. at 44 (JA100507).   The Court should disregard this warning because the Court is bound by the unambiguous language of section 1677e(b) and must, therefore, invalidate Commerce's actions even if Commerce must subsequently revise its practices as a result.   This is not a shocking or dire result but rather the normal outcome of judicial review of an agency that often has an overly sweeping view of its own authority.   See, e.g. Dorbest Ltd. v. United States, 604 F.3d 1363 (Fed. Cir. 2010) (invalidating Commerce's labor rate regulation that had been applied for more than a decade).   This would not be the first or likely the last time that a statute is found not to confer on Commerce the powers that Commerce wishes.   See GPX Int'l Tire Corp. v. United States, 678 F.3d 1308 (Fed. Cir. 2012) (holding that Commerce could not apply the CVD law to a non-market economy country absent a statutory

36

change that occurred after the decision).    As the foregoing case makes clear, however, if this Court invalidates Commerce's action based on the plain meaning of the Act and Congress disagrees with the Court's holding, Congress can change the law.

Indeed, if Congress believed at any point that section 1677e needed to be revised in response to this Court or the CIT's prior AFA rulings, Congress would have done so as it did recently in response to this Court's decision in GPX Int'l Tire Corp. v. United States.  See Pub. L. No. 112-99, 126 Stat. 265-66 (2012).[10] There, Congress acted swiftly by enacting a new law while this Court's mandate was pending in GPX, and broadly by changing both the CVD and the antidumping law.  See GPX Int'l Tire Corp. v. United States, 2013 Ct. Intl. Trade LEXIS 2, *9 (Ct. Int'l 2013) (citing Pub. L. No. 112-99, 126 Stat. 265-66 (2012)).   While Congress was revising sections 1671 and 1677f of the Act in response to GPX, it could have also made changes to section 1677e.   Congress did not, however, amend section 1677e when it passed Pub. L. No. 112-99 and Congress, thereby,

---

[10] Pub. L. No. 112-99 amended both the CVD law, by requiring Commerce to impose CVDs in the context of non-market economies and the antidumping law, by requiring Commerce to reduce the antidumping duty margin if a subsidy has increased the normal value used in Commerce's non-market economy methodology.

ratified this Court's and the CIT's earlier interpretations of section 1677e.  See, e.g., Zhejiang Dunan, 652 F.3d at 1346 (Fed. Cir. 2011) (confirming Commerce's obligation to find non-cooperation by a party prior to using an adverse inference against that party); SKF, 675 F. Supp. 2d. at 1277 (Ct. Int'l Trade 2009) (holding that Commerce could not use AFA against a cooperative mandatory respondent on the basis of a supplier's failure to cooperate because section 1677e(b) cannot be construed in a way that "the party who suffers the effect of the adverse inference is not the party who failed to cooperate").[11]  This Court, therefore, must give full effect to the plain meaning of section 1677e and its Congressionally-ratified interpretations of this section, and reverse Commerce's decision to apply AFA to a cooperative party, Fine Furniture.

In addition, any policy explanation rooted in maintaining Commerce's current AFA practice for fear of not being able to address non-cooperative

---

[11] This Court has held that "{t}he principle of legislative ratification is well established. In the case of a widely known judicial decision or agency practice, 'Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.'" GPX Int'l Tire Corp. v. United States, 666 F.3d 732, 739 (Fed. Cir. 2011) (citing Lorillard v. Pons, 434 U.S. 575, 580 (1978)).  Moreover, "even where the legislative history does not explicitly reference a prior interpretation, the Supreme Court has often found that Congress has ratified lower court and agency interpretations through statutory reenactment."  Id. (citing Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 532 (2010)).

government respondents is also irrelevant because this case concerns the calculation of Fine Furniture's CVD rate and turns on whether Commerce's treatment of <u>Fine Furniture</u> was authorized by statute.  This Court need not issue, nor is Fine Furniture proposing, a broad, sweeping decision invalidating the application of AFA in all CVD proceedings where the government fails to cooperate.  For example, there could be instances where a mandatory respondent was so linked to the government's provision of a subsidy as to justify the collateral effect of AFA.  Extending this theory to the Electricity Program is not reasonable, however.  Considering the population of China, there surely are billions of individual and commercial consumers of electricity.  To say that any consumer, such as Fine Furniture, has any influence over information provided by the GOC in a CVD investigation is preposterous.

Regardless of any future impact of this appeal, it is this Court's responsibility to "give effect to the unambiguously expressed intent of Congress." <u>Chevron</u>, 467 U.S. at 842-43.  The unambiguously expressed intent of the Act is that AFA may be applied only against the particular party charged with failing to cooperate.  Because that party in this case was the GOC, not Fine Furniture, Commerce's decision to apply AFA to Fine Furniture may not be sustained under the Act.  Even if the Court determines that the statute is ambiguous under the

39

Chevron analysis, Commerce's interpretation was still unreasonable because it resulted in direct impact on a cooperative party, it was contrary to the statutory purpose of encouraging future cooperation and it disproportionately affected Fine Furniture as compared to other similarly situated respondents.  Thus, the CIT was wrong to sustain Commerce because Commerce's application of AFA is ultra vires, unreasonable, unsupported by substantial evidence and not in accordance with law.   This Court should reverse the CIT's error.

## II.     Commerce Should Have Used Neutral Facts Under Section 1677e(a) to Calculate the Subsidy Rate for the Electricity Program

Even when Commerce found that it did not have the necessary information on the record regarding the Electricity Program, Commerce did not have to resort to AFA because it had the statutory authority to use neutral facts available to calculate Fine Furniture's benefit under this program.  Commerce may use neutral facts when it finds that "necessary information is not available on the record," or an interested party withholds information requested by Commerce under 19 U.S.C. § 1677e(a).  This provision gives Commerce the authority to use facts available to fill the gaps in the record.  See SAA, accompanying H.R. Rep. No. 103-826(I) at 869, reprinted in 1994 U.S.C.C.A.N. 4040, 4198 (Commerce is required to use "information or inferences which are reasonable to use under the circumstances"

when filling any gaps under 19 U.S.C. § 1677e(a)).    In fact, Commerce is constrained to using <u>neutral</u> facts under section 1677e(a) unless Commerce makes a separate determination that the respondent has failed to cooperate to the best of its ability.    <u>See</u> <u>Nippon Steel</u>, 337 F.3d at 1381 (providing that if requested information is not furnished to Commerce, the first step that Commerce must take under section 1677e is to "resort to other {non-adverse} sources of information to complete the factual record that a on which it makes its determination"); <u>see also</u> <u>Shantou Red Garden Foodstuff Co. v. United States</u>, 815 F. Supp. 2d 1311, 1325 (Ct. Int'l Trade 2012) (requiring Commerce to use facts available under 1677e(a) where a mandatory respondent did not fail to cooperate in requesting cost of production data from its supplier).    Commerce is constrained in precisely this way here because, as discussed above, Fine Furniture did not fail to cooperate.

The application of neutral facts is particularly appropriate when the respondent is not in a position to compel the uncooperative party to provide the requested information.    <u>See, e.g.</u>, <u>Notice of Final Results and Partial Rescission of</u> <u>Antidumping Duty Administrative Review: Roller Chain, Other Than Bicycle,</u> <u>From Japan</u>, 62 Fed. Reg. 60,472, 60,476 (Dep't Commerce Nov. 10, 1997) (using neutral facts available under 1677e(a) because the respondent "was not in a position to compel the affiliated customer to produce the information requested").

41

Here, Fine Furniture had no control over or ability to compel the GOC to provide the price proposals and Fine Furniture cooperated to the fullest extent of its abilities and efforts.   Further, the use of neutral facts was feasible because Commerce was able to calculate a neutral benchmark in the Electricity Program by averaging the provincial electricity rates that were available on the record.   <u>See</u> Fine Furniture Case Br. at 10, Ex. 1 (providing revised electricity subsidy calculations for Fine Furniture using an average of all electricity rates in its user category as the benchmark) (JA100428, JA100436).   Neutral facts are, therefore, the only lawful choice for the benchmark portion of the Electricity Program subsidy calculation.

Specifically within a CVD investigation, Commerce has clear authority under section 1677(e)(a) to apply facts otherwise available <u>without</u> adverse inferences where there is no evidence of non-cooperation by the responding party. <u>See, e.g.</u>, <u>Lightweight Thermal Paper From the People's Republic of China: Final Affirmative Countervailing Duty Determination</u>, 73 Fed. Reg. 57,323 (Dep't Commerce Oct. 2, 2008), Issues and Decision Mem. at Cmt. 6 (Sept. 25, 2008) (Public Document) (where there was insufficient information on the record, Commerce used neutral facts available to calculate the benefit in a CVD investigation); <u>Final Determination in the Antidumping Duty Investigation of</u>

<u>Certain Polyester Staple Fiber from the Republic of Korea</u>, 65 Fed. Reg. 16,880, 16,882 (Dep't Commerce Mar. 30, 2000) ("when a respondent has been unable to obtain {data} and the Department has determined that the respondent has acted to the best of its ability to get that data, we have used non-adverse facts available….{and} we will use only non adverse gap-filling facts to replace the missing…data." ); <u>see also</u> <u>Tianjin Magnesium</u>, 2011 Ct. Intl. Trade LEXIS at *9 (directing Commerce to "either find that {Plaintiff} failed to cooperate to the best of its ability and assign it an AFA rate, or calculate a neutral facts available rate for {Plaintiff}'").

As a further matter, the CIT has upheld Commerce's decision to apply neutral facts available in the analysis of a subsidy program even when the government failed to provide information relevant to that program.    In administrative decision underlying <u>Essar Steel Ltd. v. United States</u>, Commerce used AFA to determine that a specific financial contribution was provided in a wharfage fee program on the basis of the Government of India's failure to act to the best of its ability, but Commerce used neutral facts to arrive at the benchmark for calculating the benefit to respondent Essar.    <u>See</u> <u>Essar Steel Ltd. v. United States</u>, 721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010).    The CIT held:

{W}hen calculating its benefit under Gujarat's program.    Commerce

43

applied AFA against only the Government of India, with the result
that Commerce found that the EPCGS provided a financial
contribution to a specific industry. With respect to the benefit
received, on the other hand, Commerce had no government-provided
information on the program….It, therefore, resorted to facts otherwise
available on the record to derive the necessary information.

Id. at 1299 (internal citations omitted). [12]  The government's brief in the Essar case

expressly indicated that Commerce did not apply adverse facts available to Essar's

benefit calculation, "{r}ather, consistent with the statute, Commerce used neutral

facts available on the record and was not required to determine non-cooperation on

Essar's behalf to make an adverse inference to use those facts."  See Gov. Resp.

Br. 33-34, CIT Case No. 09-00197, ECF No. 36 (Apr. 13, 2010) (emphasis added).

Here, too, the calculation of Fine Furniture's subsidy rate using neutral facts was

the only lawful course.

Furthermore, the provincial electricity schedules used by Commerce to

calculate the benchmark are public information that Commerce could have

obtained irrespective of party cooperation.  See Final Calc. Mem. at 3 (JA100441).

Commerce used these public electricity schedules alone to calculate the benchmark

for the Electricity Program.  See I&D Mem. at 3 (stating that "{t}he benchmark

---

[12] Although Essar was appealed to this Court, that appeal did not include the
Gujarat Captive Port Facilities Program.  See Essar Steel Ltd. v. United States, 678
F.3d 1268 (Fed. Cir. 2012).

rates…are the highest applicable electricity rates for the user categories reported by the mandatory respondents" and showing that Commerce did not need the  2006 and 2008 provincial price proposals to calculate the benchmark) (JA100461). Based on these same public electricity schedules, Fine Furniture provided Commerce with a neutral calculation of the benchmark for the Electricity Program. See Fine Furniture Case Br. at 10, Ex. 1 (JA100428, JA100436).  In addition, Fine Furniture's proposal did not eliminate high and unfavorable rates from its calculation, but rather included all electricity rates on record for the relevant user group, high and low, to calculate the average benchmark in a neutral way. Commerce, meanwhile, cherry-picked only the worst rate and thereby acted unreasonably.  See Final Calc. Mem. at 3 (Public Version) (JA100441) (showing that Commerce selected the highest rates on the record within the same user category as Fine Furniture as benchmarks to which to compare Fine Furniture's electricity rates.)

The CIT concluded that "Fine Furniture's plea for the use of neutral facts in calculating the benchmark is not without some persuasive force {and that} {o}ften, the calculation of the benefit is drawn from the record submissions of the respondent companies." Fine Furniture I, 865 F. Supp. 2d at 1262 (JA000005). The CIT went on to state that Commerce would be expected to consider an

45

alternative, neutral benchmark if there was one on the record that was consistent with Commerce's regulations, 19 C.F.R. § 351.511(a)(2) (2012). Id. Practically, and by regulation, however, Commerce does not consider outside benchmarks when measuring the provision of electricity for less than adequate remuneration. See Drawn Stainless Steel Sinks From the People's Republic of China: Final Affirmative Countervailing Duty Determination, 78 Fed. Reg. 13,017, Issues and Decision Mem. at Comment 13 (Dep't Commerce Feb. 26, 2013) (providing that Commerce will not derive an electricity benchmark from outside the PRC because "{t}he CVD Preamble uses electricity as an example where it is not reasonable to conclude that a world market price would be available to an in-country purchaser," and "even if electricity is available from outside the PRC, it is not reasonable to expect that imported electricity could be priced differently than those rates established by the GOC."); see also Countervailing Duties, 63 Fed. Reg. 65,348, 65,377 (Dep't Commerce Nov. 25, 1998) (final rule) (stating that the price of electricity in one country "normally would not be an acceptable comparison for electricity provided by {another country's} government, because electricity {in one country} in all likelihood would not be available to consumers in {the other country}").

The fact that Commerce refuses to accept any outside benchmarks for

electricity in Chinese CVD cases makes a neutral benchmark within China the only statutorily acceptable option.    See Maclean-Fogg, 836 F. Supp. 2d at 1376 ("Administrative law is rooted in the reasonableness standard, and this standard applies with equal force regardless of whether the issue originates in an antidumping or countervailing duty investigation.").   A neutral calculation of the benefit received from the Electricity Program is reasonable because it reflects Fine Furniture's cooperation and is based on information readily available on the record.   For these reasons, Commerce acted unreasonably and contrary to law when it resorted to AFA instead of using neutral facts available to calculate Fine Furniture's benefit under the Electricity Program.

## CONCLUSION

Because section 1677e unambiguously requires Commerce to make a finding of non-cooperation before using AFA against a party or else to use neutral facts available, the Court must give full effect to the statute as written under the first prong of Chevron and find that Commerce acted contrary to law in applying AFA to Fine Furniture without such a finding of non-cooperation.   Even if the Court reviews Commerce's final determination under the second prong of Chevron, the Court should find that Commerce was unreasonable in using AFA against Fine Furniture.   For the foregoing reasons, the use of AFA against Fine

Furniture was <u>ultra vires</u>, unsupported by substantial evidence and otherwise not in accordance with the law.   Accordingly, this Court should reverse the CIT's decision with instructions to remand the case to Commerce to eliminate the use of AFA against Fine Furniture.

Respectfully submitted,

/s/ Kristin H. Mowry
Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Susan Lehman Brooks
Sarah M. Wyss
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Ste. 810
Washington, DC 20015
*Counsel to Fine Furniture (Shanghai) Limited, Great Wood (Tonghua) Ltd., and Fine Furniture Plantation (Shishou) Ltd.*

/s/ Francis J. Sailer
Francis J. Sailer
Mark E. Pardo
Andrew T. Schutz
Grunfeld Desiderio Lebowitz Silverman & Klestadt,LLP
1201 New York Avenue, NW. Suite 650
Washington, DC 20005
*Counsel to Baroque Timber Industries (Zhongshan) Co., Ltd., Riverside Plywood Corporation, Samling Elegant Living Trading (Labuan) Limited, Samling Global USA, Inc., Samling Riverside Co., Ltd., Suzhou Times Flooring Co., Ltd., Shanghai*

48

*Eswell Timber, Co. Ltd., Shanghai Lairunde Wood Co., Ltd., Shanghai New Sihe Wood Co., Ltd., Shanghai Shenlin Corporation, Vicwood Industry (Suzhou) Co. Ltd., Xuzhou Shenghe Wood Co., Ltd., and A&W (Shanghai) Woods Co., Ltd.*

/s/ Gregory S. Menegaz
Gregory S. Menegaz
DeKieffer & Horgan
729 Fifteenth Street, NW., Suite 800
Washington, DC 20005-2105
*Counsel to Changzhou Hawd Flooring Co., Ltd., Dunhua City Jisen Wood Industry Co., Ltd., Dunhua City Dexin Wood Industry Co., Ltd., Dalian Huilong Wooden Products Co., Ltd., Kunshan Yingyi-Nature Wood Industry Co., Ltd, and Karly Wood Product Limited*

March 15, 2013

**ADDENDUM**



FINE FURNITURE (SHANGHAI) LIMITED, et al., Plaintiffs, and HUNCHUN FOREST WOLF INDUSTRY COMPANY LIMITED, et al., Plaintiff-Intervenors, v. UNITED STATES, Defendant, and THE COALITION FOR AMERICAN HARDWOOD PARITY, Defendant-Intervenor.

### Consol. Court No. 11-00533 [1]

1  This action was consolidated with portions of the complaints from Court Nos. 12-00009, 12-00017, and 12-00022. Order, Apr. 5, 2012, ECF No. 50.

### UNITED STATES COURT OF INTERNATIONAL TRADE

*2012 Ct. Intl. Trade LEXIS 115; 2012 SLIP OP. 113; 34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254*

### August 31, 2012, Dated

**SUBSEQUENT HISTORY:** Appeal after remand at *Fine Furniture (Shanghai) Ltd. v. United States, 878 F. Supp. 2d 1328, 2012 Ct. Intl. Trade LEXIS 140 (Nov. 15, 2012)*

**DISPOSITION:** [*1]  affirming, in part, and remanding, in part, the Department of Commerce's Final Determination.

**COUNSEL:** Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer, Susan L. Brooks, Sarah M. Wyss, and Keith F. Huffman, Mowry & Grimson, PLLC, of Washington, DC, for the Plaintiffs Fine Furniture (Shanghai) Ltd.; Great Wood (Tonghua) Ltd.; and Fine Furniture Plantation (Shishou) Ltd.

Francis J. Sailer, Mark B. Pardo, Andrew T. Schutz, and Kavita Mohan, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, DC, for the Consolidated Plaintiffs Baroque Timber Industries (Zhongshan) Co., Ltd.; Riverside Plywood Corp.; Samling Elegant Living Trading (Labuan) Ltd.; Samling Global USA, Inc.; Samling Riverside Co., Ltd.; Suzhou Times Flooring Co., Ltd.; Shanghai Eswell Timber Co., Ltd.; Shanghai Lairunde Wood Co., Ltd.; Shanghai New Sihe Wood Co., Ltd.; Shanghai Shenlin Corp.; Vicwood Industry (Suzhou) Co. Ltd.; Xuzhou Shenghe Wood Co., Ltd.; and A&W (Shanghai) Woods Co., Ltd.

Gregory S. Menegaz, J. Kevin Horgan, and John J. Kenkel, deKieffer & Horgan, PLLC, of Washington, DC, for the Plaintiff-Intervenors Changzhou Hawd Flooring Co., Ltd.; Dunhua City Jisen Wood Industry Co., Ltd.; Dunhua City Dexin [*2] Wood Industry Co., Ltd.; Dalian Huilong Wooden Products Co., Ltd.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; and Karly Wood Product Ltd.

Jeffrey S. Neeley, Michael S. Holton, and Stephen W. Brophy, Barnes, Richardson & Colburn, of Washington, DC, for Plaintiff-Intervenors Hunchun Forest Wolf Industry Co. Ltd.; Dunhua City Dexin Wood Industry Co., Ltd.; Nanjing Minglin Wooden Industry Co., Ltd.; Dalian Penghong Floor Products Co., Ltd.; Dongtai Fuan Universal Dynamics,

2012 Ct. Intl. Trade LEXIS 115, *2; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **

LLC; Zhejiang Fudeli Timber Industry Co., Ltd.; Dunhua City Jisen Wood Industry Co., Ltd.; Fusong Qianqiu Wooden Product Co., Ltd.; Power Dekor Group Co., Ltd.; Jiafeng Wood (Suzhou) Co., Ltd.; Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.; Shenyang Haobainian Wooden Co., Ltd.; Guangzhou Pan Yu Kang Da Board Co., Ltd.; Nakahiro Jyou Sei Furniture (Dalian) Co., Ltd.; Yixing Lion-King Timber Industry Co., Ltd.; Guangzhou Panyu Southernstar Co., Ltd.; Dalian Kemian Wood Industry Co., Ltd.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; Fu Lik Timber (HK) Co. Ltd.; Puli Trading Ltd.; Zhejiang Shiyou Timber Co., Ltd.; Shanghai Lizhong Wood Products Co., Ltd.; and Shenzhenshi Huanwei Woods Co. Ltd.

Daniel L. Porter, [*3] Matthew P. McCullough, Ross E. Bidlingmaier, and William H. Barringer, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for the Plaintiff-Intervenor the Bureau of Fair Trade for Imports & Exports, Ministry of Commerce, People's Republic of China.

Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant United States. With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of Counsel on the briefs was Jonathan Zielinksi, Senior Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce.

Jeffrey S. Levin, Levin Trade Law, P.C., of Bethesda, MD, and John B. Totaro, Jr., Neville Peterson, LLP, of Washington, DC, for the Defendant-Intervenor the Coalition for American Hardwood Parity.

**JUDGES:** Before: Donald C. Pogue, Chief Judge.

**OPINION BY:** Donald C. Pogue

**OPINION**

[**1258] OPINION AND ORDER

**Chief Judge Pogue:** This is a consolidated action seeking review of determinations made by the United States Department of Commerce ("Commerce" or "the Department") in the countervailing duty ("CVD") investigation [*4] of multilayered wood flooring from the People's Republic of China ("China"). [2] Currently before the court is Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record. In their motion, Plaintiffs challenge three aspects of Commerce's Final Determination: (1) Commerce's use of adverse facts available ("AFA") in determining the benchmark rate for calculating the benefit Plaintiff Fine Furniture received from the provision of electricity for less than adequate remuneration; (2) Commerce's inclusion of the Basic Electricity Tariff in the calculation of the electricity subsidy rate in the Final Determination without notice and opportunity to comment by respondents; and (3) the inclusion of Shanghai Eswell Enterprise Co., Ltd. and Elegant Living Corporation on the list of non-cooperating companies.

> 2  Multilayered Wood Flooring from the *People's Republic of China, 76 Fed. Reg. 64,313 (Dep't Commerce Oct. 18, 2011)* (final affirmative countervailing duty determination) ("Final Determination"), and accompanying Issues & Decision Memorandum, C-570-971, POI 09, Admin R. Pt. 2 Pub. Doc. 20, available at http://ia.ita.doc.gov/frn/summary/PRC/2011-26892-1.pdf (last visited Aug. 28, 2012) ("I &  [*5] D Mem.") (adopted in the *Final Determination, 76 Fed. Reg. at 64,313*).

As explained below, the court (1) affirms Commerce's use of AFA in determining the benchmark for provision of electricity at less than adequate remuneration; (2) affirms the inclusion of the Basic Electricity Tariff as a component of the electricity subsidy; and (3) remands the Final Determination to Commerce to reconsider and remove or provide further explanation for including Shanghai Eswell Enterprise Co., Ltd. and Elegant Living Corporation on the list of non-cooperating companies.

2012 Ct. Intl. Trade LEXIS 115, *5; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1258

The court has jurisdiction pursuant to § 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, *19 U.S.C. §* *1516a(a)(2)(B)(i) (2006)* [3] and *28 U.S.C. § 1581(c) (2006)*.

3   All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

## BACKGROUND[4]

4   The following summary of facts is provided as general background to the investigation at issue in this case; facts specific to the determinations challenged are included in the discussion of the relevant challenge.

This case arises from Commerce's initiation of a countervailing duty investigation of multilayered wood flooring from China, on November 18, [*6] 2010, following a petition from Defendant-Intervenor the Coalition for American Hardwood Parity ("CAHP"). See Multilayered Wood Flooring from the *People's Republic of China, 75 Fed. Reg.* *70,719, 70,719 (Dep't Commerce Nov. 18,* [**1259] *2010)* (initiation of countervailing duty investigation). In its investigation, and pursuant to *19 U.S.C. § 1677f-1(c)(2)*, Commerce limited the mandatory respondents to three companies and their affiliates: (1) Fine Furniture (Shanghai) Ltd., Great Wood (Tonghua) Ltd., and Fine Furniture Plantation (Shishou) Ltd. (collectively "Fine Furniture"); (2) Zhejiang Layo Wood Industry Co., Ltd. and Jiaxing Brilliant Import & Export Co., Ltd. (collectively "Layo"); and (3) Zhejiang Yuhua Timber Co., Ltd. ("Yuhua"). Respondent Selection Memo, C-570-971, POI 09 (Dec. 30, 2010), Admin. R. Pt. 1 Pub. Doc. 193 at 4; Multilayered Wood Flooring from the *People's Republic of China, 76 Fed. Reg. 19,034, 19,038-39 (Dep't Commerce Apr. 6, 2011)* (preliminary affirmative countervailing duty determination) ("Preliminary Determination"). In the Preliminary Determination, Commerce assigned zero rates to Layo and Yuhua; a 2.25% rate to Fine Furniture; a 2.25% all others rate for cooperating [*7] companies; and a 27.01% rate for non-cooperating companies. *Preliminary Determination, 76* *Fed. Reg. at 19,041-42.* Following comments on the Preliminary Determination, Commerce issued the Final Determination on October 18, 2011. *Final Determination, 76 Fed. Reg. at 64,313.* In the Final Determination, Commerce adjusted the subsidy rates as follows: Layo and Yuhua received *de minimis* rates; Fine Furniture received a 1.50% rate; all other cooperating respondents received a 1.50% rate; and all non-cooperating respondents received a 26.73% rate. *Final Determination, 76 Fed. Reg. at 64,315-17.*

## STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." *19 U.S.C. § 1516a(b)(1)(B)(i).*

## DISCUSSION

A countervailing duty is imposed on an import whenever Commerce determines that "the government of a country or any public entity within the territory of a country is providing, directly or indirectly, a countervailable subsidy . . . ." *19 U.S.C. § 1671(a).* [5] To be countervailable, a subsidy must provide a financial contribution to a specific industry, and the respondent [*8] must benefit. See *19 U.S.C. § 1677(5)-(5A); Essar Steel Ltd. v. United States, 34 CIT     , 721 F.* *Supp. 2d 1285, 1292 (2010).*

5   To impose a countervailing duty, the International Trade Commission must also find "material injury" to a domestic industry, *19 U.S.C. § 1671(a)*; however, the ITC's determination is not at issue in this case.

When investigating whether the statute requires imposition of a countervailing duty order, Commerce often requires both the respondent and the foreign government to submit factual information. *Essar Steel, 34 CIT at     , 721 F.* *Supp. 2d at 1297* ("Typically, foreign governments are in the best position to provide information regarding the administration of their alleged subsidy programs, including eligible recipients. The respondent companies, on the other hand, will have information pertaining to the existence and amount of the benefit conferred on them by the program."). In addition, when determining whether or not a subsidy is countervailable, Commerce relies on facts placed on the record by interested parties.

2012 Ct. Intl. Trade LEXIS 115, *8; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1259

When an interested party has failed to submit necessary information, Commerce may make its determination on [**1260] the basis of facts otherwise available [*9] ("FOA"), and in certain circumstances on the basis of AFA. *19 U.S.C. § 1677e(a)-(b).* [6] Before Commerce may employ FOA, *19 U.S.C. § 1677m(d)* provides respondents with an opportunity to remedy or explain deficiencies in their submissions. *§ 1677e(a); Reiner Brach GmbH & Co.KG v. United States, 26 CIT 549, 555, 206 F. Supp. 2d 1323, 1330 (2002)*(quoting *Mannesmannrohren-Werke AG v. United States, 23 CIT 826, 837-38, 77 F. Supp. 2d 1302, 1313 (1999))*. In addition, FOA are only appropriate to fill gaps in the record evidence when Commerce must rely on other sources to complete the record. *Zhejiang Dunan Hetian Metal Co. v. United States, 652 F.3d 1333, 1346 (Fed. Cir. 2011)*. When Commerce can independently fill in the gaps, without the requested information, FOA and adverse inferences are not appropriate. See *Id. at 1348; Gerber Food (Yunnan) Co. v. United States, 29 CIT 753, 767-68, 387 F. Supp. 2d 1270, 1283 (2005)*. Nonetheless, if Commerce finds "that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request . . . [Commerce] may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise [*10] available." *19 U.S.C. § 1677e(b); Zhejiang, 652 F.3d at 1346.*

> 6   The statute authorizes Commerce to make use of FOA when (1) the record lacks necessary information or (2) a respondent withholds information, fails to provide information, impedes a proceeding, or provides unverifiable information. *§ 1677e(a).*

I. Commerce Properly Applied AFA in Determining the Benchmark for Provision of Electricity at Less than Adequate Remuneration

*A. Background*

In the Final Determination, Commerce used adverse inferences to determine that Plaintiff Fine Furniture received a countervailable subsidy through the provision of electricity at less than adequate remuneration (the "LTAR subsidy"). *Final Determination, 76 Fed. Reg. at 64,315.* Commerce made recourse to adverse inferences because the Government of China ("GOC") failed to provide requested information in the form of provincial electricity price proposals. I & D Mem. Cmt. 4 at 43-44.

> The GOC did not provide a complete response to the Department's January 3, 2011 questionnaire regarding the alleged provision of electricity for LTAR. Specifically, the Department requested that the GOC provide the original provincial price proposals for 2006 and 2008 for [*11] each province in which a mandatory respondent or any reported "cross-owned" company is located. Because the requested price proposals are part of the GOC's electricity price adjustment process, the documents are necessary for the Department's analysis of the program. . . . Consequently, we determine that the GOC has withheld necessary information that was requested of it and, thus, that the Department must rely on "facts available" in making our final determination. Moreover, we determine that the GOC has failed to cooperate by not acting to the best of its ability to comply with our request for information as it did not respond by the deadline dates, nor did it explain to the Department's satisfaction why it was unable to provide the requested information. Consequently, an adverse inference is warranted in the application of facts available.

I & D Mem. at 2 (footnotes omitted). Using FOA and applying an adverse inference, Commerce set a benchmark rate equal to the highest rate reported in the [**1261] provincial price schedules for electricity. I & D Mem. at 3.

*B. Analysis*

The dispute between the parties centers on whether the adverse inferences drawn against the non-cooperating party, the GOC, [*12] are rendered impermissible when they are collaterally adverse to the cooperating party, Fine Furniture. Fine Furniture contends that the inferences drawn were impermissibly adverse to Fine Furniture, who was a cooperating party in the investigation. Commerce, however, argues that it properly employed inferences adverse to the GOC -- the

Page 5

2012 Ct. Intl. Trade LEXIS 115, *12; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1261

non-cooperating party -- and that any impact on Fine Furniture was simply collateral, which does not render the inferences impermissible. Neither party contests the fact that the GOC failed to provide necessary information to Commerce.

Among the financial contributions that are potentially countervailable is the provision of goods and services at less than adequate remuneration. *19 U.S.C. § 1677(5)(E)(iv).* In order to determine if a benefit is provided at less than adequate remuneration, the price paid is compared with a price set by "prevailing market conditions for the good or service being provided . . . in the country which is subject to the investigation or review." *§ 1677(5)(E).* Commerce has promulgated further regulations for determining this "benchmark" value. *19 C.F.R. § 351.511(a)(2)(i)-(iii) (2012)* [7]; *Essar Steel, 34 CIT at    , 721 F. Supp. 2d at 1292.* [*13] [8]

> 7   All subsequent citations to the Code of Federal Regulations are to the 2012 edition, unless otherwise noted.
> 8   These regulations set up a three tier system for determining the benchmark. First, "[t]he Secretary will normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price for the good or service resulting from actual transactions in the country in question." *19 C.F.R. § 351.511(a)(2)(i).* Second, if no market-determined price is available from within the country in question, then "the Secretary will seek to measure the adequacy of remuneration by comparing the government price to a world market price where it is reasonable to conclude that such price would be available to purchasers in the country in question." *§ 351.511(a)(2)(ii).* Finally, if neither an actual market-determined price nor a world market price is available, "the Secretary will normally measure the adequacy of remuneration by assessing whether the government price is consistent with market principles." *§ 351.511(a)(2)(iii).*

In this case, no benchmarks consistent with *19 C.F.R. § 351.511(a)(2)(i)-(ii)* were available. [9] Therefore, Commerce sought to value the benchmark [*14] by assessing the relationship of the government price to market principles, pursuant to *§ 351.511(a)(2)(iii),* but found that the GOC's refusal to provide the provincial price proposals prevented it from determining if the prices were consistent with any market principles. I & D Mem. Cmt. 4 at 43-44. Because it did not have the [**1262] data to value a benchmark, Commerce relied upon FOA, *19 U.S.C. § 1677e(a),* in the form of the provincial price schedules on the record. Because the necessary information was lacking as a result of the GOC's refusal to provide it, Commerce also applied an adverse inference pursuant to *19 U.S.C. § 1677e(b).*

> 9   As all parties agree in their responses to the court's further briefing request, electricity in China cannot be valued through actual transactions in the country, *§ 351.511(a)(2)(i),* because rates are set by the government, nor can electricity be valued using a world market price, *§ 351.511(a)(2)(ii),* because it cannot be purchased on the world market. See Def.'s Resp. to the Court's June 25, 2012 Letter at 3, ECF No. 73; Pls.' Letter Br. at 3, ECF No. 74; see also *Countervailing Duties, 63 Fed. Reg. 65,348, 65,377 (Dep't Commerce Nov. 25, 1998)* (final rule) [*15] ("We will consider whether the market conditions in the country are such that it is reasonable to conclude that the purchaser could obtain the good or service on the world market. For example, a European price for electricity normally would not be an acceptable comparison for electricity provided by a Latin American government, because electricity from Europe in all likelihood would not be available to consumers in Latin America.").

Fine Furniture's plea for the use of neutral facts in calculating the benchmark is not without some persuasive force. Often, the calculation of the benefit is drawn from the record submissions of the respondent companies. See *Essar Steel, 34 CIT at    , 721 F. Supp. 2d at 1297* ("[T]he agency then attempts to use information provided by the individual respondent companies regarding the benefit, if any, conferred by the particular program."). Where the respondents have placed evidence on the record consistent with the Department's regulations for calculating benchmarks, see *19 C.F.R. § 351.511(a)(2),* Commerce would be expected to consider such evidence. Furthermore, if an alternative benchmark meeting such criteria were available on the record and did not [*16] adversely affect a cooperative party, such a benchmark would be superior to one which does adversely affect a cooperative party. [10]

> 10   Commerce is correct that the inference drawn in this case was not directly adverse to Fine Furniture. It is

Page 6

2012 Ct. Intl. Trade LEXIS 115, *16; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1262

true that Fine Furniture is adversely affected by the use of the highest rates included in the provincial price proposals. However, the inference drawn was prompted by the GOC's failure to cooperate and was adverse to the interests of the GOC. We do not treat the GOC and Fine Furniture as a joint entity in making our determination; rather, we acknowledge that, in the context of a CVD investigation, an inference adverse to the interests of a non-cooperating government respondent may collaterally affect a cooperative respondent. While such an inference is permissible under the statute, it is disfavored and should not be employed when facts not collaterally adverse to a cooperative party are available.

The problem for Fine Furniture is that there is no such benchmark on the record in this case. Commerce employed FOA because the lack of the provincial price proposals prevented it from determining whether the electricity rates provided by respondent companies [*17] were set pursuant to market principles. *§ 351.511(a)(2)(iii)*. Because the price proposals were necessary to determine the benchmark rate, and the GOC refused to provide them, Commerce also applied an adverse inference. [11] Though Fine Furniture was put on notice by the benchmark regulation, it did not place on the record any alternative benchmarks consistent with *§ 351.511(a)(2)*.

[11] In the letter briefing requested by the court, Plaintiffs argue that there was sufficient indicia in the record for Commerce to determine that the provincial price schedules reflected market-determined rates. Pls.' Letter Br. at 3-4. When reviewing Commerce's determinations on a substantial evidence standard, the court considers whether the determination is supported by substantial evidence on the record as a whole. See *Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997)*. "[T]he possibility of drawing two inconsistent conclusions from the evidence does prevent an administrative agency's finding from being supported by substantial evidence," *Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966)*, and "[t]he court is not empowered to substitute its judgment for that of the agency." *Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)*, [*18] abrogated on other grounds by *Califano v. Sanders, 430 U.S. 99, 105, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)*. Though there is some evidence on the record suggesting that the provincial price schedules could reflect market-determined prices, the court will not upset Commerce's determination that the provincial price proposals were a critical element in arriving at such a conclusion.

[**1263] Fine Furniture did propose what it terms a "neutral benchmark," which would be calculated by averaging all rates within the same user category of the provincial price schedule as Fine Furniture's rate, and argued that its proposed benchmark would be more appropriate. However, there is nothing to indicate that Fine Furniture's proposed neutral benchmark would more accurately reflect a market-determined price for electricity. Therefore, Fine Furniture's proposed neutral benchmark is, in fact, not a benchmark, see *§ 351.511(a)(2)*, because it fails to establish the relationship that Fine Furniture's electricity rates bear to a market determined rate. In a situation such as this, where an interested party "failed to cooperate by not acting to the best of its ability to comply with a request for information," *19 U.S.C. § 1677e(b)*, and that information [*19] was necessary to the subsidy calculation, *19 U.S.C. § 1677e(a)* -- thereby fulfilling the prerequisites for the use of both FOA and adverse inferences -- Commerce acted within its statutory authority in applying both FOA and an adverse inference.

If the record contained evidence that met one of the three regulatory requirements for setting a benchmark, Fine Furniture may have been able to argue that Commerce should have relied upon that record evidence. However, the neutral benchmark requested by Fine Furniture does not meet this test. The neutral benchmark is no better proxy for a market determined rate than the AFA benchmark. Without showing that the neutral benchmark better complies with the statutory and regulatory requirements, Fine Furniture is asking the court to substitute its judgment for that of Commerce, but this is not the court's role. *Inland Steel Indus., Inc. v. United States, 188 F.3d 1349, 1360-61 (Fed. Cir. 1999); Ad Hoc Shrimp Trade Action Comm. v. United States, 36 CIT , 828 F. Supp. 2d 1345, 1350 (2012)*.

Accordingly, because Commerce's decision to apply AFA in calculating the LTAR subsidy is consistent with the statute and regulations, and because the court does [*20] not substitute or displace Commerce's judgment with regard to the weight or credibility of the evidence, the use of AFA in setting the LTAR subsidy benchmark is affirmed.

2012 Ct. Intl. Trade LEXIS 115, *20; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1263

II. Commerce's Failure to Provide Notice and Opportunity to Comment on Inclusion of the Basic Electricity Tariff Was Harmless Error

*A. Background*

In the Final Determination, Commerce included the Basic Electricity Tariff ("BET") in the calculation of the benefit for the LTAR subsidy. I & D Mem. at 14. This cost was not included in the calculation of the LTAR subsidy in the Preliminary Determination. Id. Nor were Plaintiffs given any notice that Commerce had decided to include the BET in calculation of the LTAR subsidy prior to publication of the Final Determination.

*B. Analysis*

Plaintiffs raise a procedural challenge to the inclusion of the BET, arguing that Commerce's failure to provide notice and an opportunity for comment violated *19 U.S.C. § 1677m(g)*. [12] Plaintiffs premise their argument, in large part, on the contention [**1264] that the BET was a separate subsidy from the LTAR subsidy, and therefore, it required a separate subsidy investigation.

12   *19 U.S.C. § 1677m(g)* reads, in relevant part:

> [Commerce] . . . before making [*21] a final determination under section 1671d, 1673d, 1675, or 1675b of this title shall cease collecting information and shall provide the parties with a final opportunity to comment on the information obtained by [Commerce] . . . upon which the parties have not previously had an opportunity to comment.

Commerce responds that the BET is not a separate subsidy, rather it is a component of the LTAR subsidy. Therefore, according to Commerce, the inclusion of the BET in the Final Determination was merely the correction of an oversight in the Preliminary Determination.

Commerce's response has weight because the BET is best characterized as a component of the LTAR subsidy. The BET is an element of respondents' overall electricity payment; therefore, it is reasonable for Commerce to include the BET in the calculation of benefit under the LTAR subsidy. This determination is also consistent with Commerce's practice in other countervailing duty determinations regarding merchandise from China. [13]

13   See, e.g., Drill Pipe from the *People's Republic of China, 76 Fed. Reg. 1971 (Dep't Commerce Jan. 11, 2011)* (final affirmative countervailing duty determination) and accompanying Issues and Decision Memorandum [*22] at 27, C-570-966, POI 09 (Jan. 11, 2011), available at http://ia.ita.doc.gov/frn/summary/PRC/2011-392-1.pdf (last visited Aug. 29, 2012); Pre-Stressed Concrete Steel Wire Strand from the *People's Republic of China, 75 Fed. Reg. 28,557 (Dep't Commerce May 21, 2010)* (final affirmative countervailing duty determination) and accompanying Issues and Decision Memorandum at 33-34, C-570-946, POI 08 (May 14, 2010), available at http://ia.ita.doc.gov/frn/summary/prc/2010-12292-1.pdf (last visited Aug. 29, 2012).

Nonetheless, our finding that the BET was an aspect of the LTAR subsidy does not lead us to conclude that Commerce followed proper procedure when it included the BET in the Final Determination without first including it in the Preliminary Determination or otherwise providing notice and an opportunity to comment. To the contrary, Commerce should have included the BET in the Preliminary Determination, thereby permitting Plaintiffs an opportunity to challenge that determination at the administrative level. Commerce did not do this. In this regard, the inclusion of the BET was procedurally defective. [14]

14   The court need not decide whether the specific action challenged here was a violation [*23] of *19 U.S.C. § 1677m(g)*. It is sufficient to note that plaintiffs challenging agency action before the Court of International Trade

2012 Ct. Intl. Trade LEXIS 115, *23; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1264

are required to exhaust their administrative remedies. *28 U.S.C. § 2637(d) (2006)*; *Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir. 2003)*. When Commerce fails to provide an opportunity for comment, it inhibits a plaintiff's opportunity to exhaust its administrative remedies. While the court finds that it may hear a challenge in such a case, *see infra* note 15, the procedural defect may be relevant when the record is insufficiently developed for the court to render a decision.

However, in the absence of a substantive challenge to the inclusion of the BET, the procedural defect is harmless error. *See Cummins Engine Co. v. United States, 23 CIT 1019, 1032, 83 F. Supp. 2d 1366, 1378 (1999)* ("In reviewing an agency's procedural error for which the law does not prescribe a consequence . . . it is well settled that principles of harmless error apply. . . . Under the rule of prejudicial error, or harmless error analysis, the Court will not overturn an agency's action 'if the procedural error complained of was harmless.'" (quoting *Barnhart v. United States Treasury Dep't, 7 CIT 295, 302, 588 F. Supp. 1432, 1437 (1984)*)).

Because [*24] Plaintiffs do not raise any compelling substantive arguments, the court finds no reason to remand the case to Commerce for further explanation or proceeding. [15] Plaintiffs' primary argument, [**1265] that Commerce should have initiated a separate investigation of the BET subsidy, is unavailing because Commerce reasonably determined that the BET was merely an element of the larger LTAR subsidy. Plaintiffs do not raise any further substantive arguments in their letter brief to the court, except for a fleeting reference to other non-included payments purportedly analogous to the BET. Pls.' Letter Br. at 6 ("Even without the benefit of a proper investigation, however, there is evidence to suggest that the BET is different from the other electricity charges that Commerce found to be countervailable subsidies."). What has been provided is insufficient for the court to conclude that Plaintiffs have a substantive claim regarding the BET. Therefore, Commerce's inclusion of the BET in the benefit calculation for the LTAR subsidy in the Final Determination without first addressing it in the Preliminary Determination is harmless error.

15    Plaintiffs would not have been barred from bringing substantive claims [*25] before this court by the exhaustion of administrative remedies doctrine. Prior case law supports the court's capacity to hear and decide a challenge on substantive grounds that was not raised at the administrative level, when no opportunity for comment was provided. *See China Steel Corp. v. United States, 28 CIT 38, 59, 306 F. Supp. 2d 1291, 1310 (2004)* ("[I]n determining whether questions are precluded from consideration on appeal, the [Court of International Trade] will assess the practical ability of a party to have its arguments considered by the administrative body." (citation omitted)); *see also Lifestyle Enter. v. United States, 35 CIT   , 768 F. Supp. 2d 1286, 1300 n.17 (2011)* ("A party, however, may seek judicial review of an issue that it did not brief at the administrative level if Commerce did not address the issue until its final decision, because in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the administrative level."); *Globe Metallurgical, Inc. v. United States, 29 CIT 867, 873 (2005)* ("The court has recognized certain exceptions to the application of the exhaustion doctrine. One such applicable exception arises [*26] when the respondent is not given the opportunity to raise its objections at the administrative level because Commerce did not address the issue until the final determination.").

III. Inclusion of Elegant Living and Eswell Enterprise on the AFA List Was Not Supported by Substantial Evidence

*A. Background*

In order to select mandatory respondents for the instant CVD investigation, Commerce issued quantity and value ("Q&V") questionnaires to, *inter alia*, Shanghai Eswell Enterprise Co., Ltd. ("Eswell Enterprise"), Elegant Living Corp. ("Elegant Living"), and Times Flooring Co., Ltd. ("Times Flooring"). Issuance of Q&V Questionnaires, C-570-971, POI 09 (Dec. 3, 2010), Admin. R. Pt. 1 Pub. Doc. 91 attach. 1. When no company under these names responded, Commerce placed these companies on the list of non-cooperating companies that would receive an AFA rate. *Preliminary Determination, 76 Fed. Reg. at 19,042*.

Following the Preliminary Determination, Plaintiffs filed ministerial error allegations protesting the inclusion of

Page 9

2012 Ct. Intl. Trade LEXIS 115, *26; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1265

Eswell Enterprise, Elegant Living, and Times Flooring on the AFA list. In the ministerial error allegations, Plaintiff Shanghai Eswell Timber Co., Ltd. ("Eswell Timber") argued [*27] that Eswell Enterprise was its non-exporting parent company, Eswell Timber Ministerial Error Comments, C-570-971, POI 09 (Mar. 25, 2011), Admin. R. Pt. 1 Pub. Doc. 256 at 1-2 ("Eswell Allegation"), and Plaintiff Samling Group argued that Elegant Living and Times Flooring represented inaccurate listings of, respectively, Baroque Timber Industries (Zhongshan) Co., Ltd., ("Baroque Timber") and Suzhou Times Flooring Co., Ltd., Samling Group Ministerial Error Allegation, C-570-971, POI 09 (Mar. 24, 2011), Admin. R. Pt. 1 Pub. Doc. 255 at 2 ("Samling Allegation").

[**1266]  In response to the ministerial error allegations, Commerce requested additional information from Plaintiffs. Ministerial Error Allegations Mem., C-570-971, POI 09 (Apr. 21, 2011), Admin. R. Pt. 1 Pub. Doc. 270 at 4; I & D Mem. Cmt. 6 at 47-48. Eswell Timber provided business and shareholder information outlining Eswell Enterprise's ownership of Eswell Timber and a statement from Eswell Enterprise confirming that it did not independently export subject merchandise. Eswell Timber Questionnaire Resp., C-570-971, POI 09 (June 30, 2011), Admin. R. Pt. 1 Pub. Doc. 326 at 5, attach. 1 ("Eswell Resp."). Samling Group provided information [*28] on its corporate and capital structure, noting that, though no company under the name Elegant Living existed within the Samling Group hierarchy, Baroque Timber occasionally uses "Elegant Living" as a trade name. Samling Group Questionnaire Resp., C-570-971, POI 09 (June 30, 2011), Admin. R. Pt. 1 Pub. Doc. 325 exs. A, B ("Samling Resp."); Samling 6/30 Questionnaire Public Version Narrative, C-570-971, ARP 09 (July 1, 2011), Admin. R. Pt. 1 Pub. Doc. 328 at 2 ("Samling Narrative Resp.").

Commerce eventually removed Times Flooring from the AFA list but not Eswell Enterprise or Elegant Living. Final Determination, 76 Fed. Reg. at 64,315-17; I & D Mem. Cmt. 6 at 49. According to Commerce, although the strong similarities in names and addresses shared by the "Times Flooring" companies justified merging the two, Baroque Timber and Elegant Living did not share equally dispositive similarities. I & D Mem. Cmt. 6 at 49. Commerce primarily justified its decision by relying on evidence that separate companies within Samling Group used "elegant living" as part of their names. Id.; Samling Resp. ex. B. Therefore, Commerce reasons, since a company separate from Baroque Timber potentially existed, [*29] a separate response should have been filed on behalf of Elegant Living. See I & D Mem. Cmt. 6 at 49. Likewise, Commerce concluded that Eswell Enterprise was a separate company from Eswell Timber, and therefore, it should have responded separately to the Q&V questionnaire it received. Id.

*B. Analysis*

In the instant case, Commerce emphasizes Plaintiffs' failure to submit information by the Q&V deadline as a failure to cooperate, thereby justifying the application of AFA. Def.'s Resp. at 26-27. And, certainly, setting and enforcing its own deadlines is within Commerce's discretion. See, e.g., *Reiner Brach, 26 CIT at 559, 206 F. Supp. 2d at 1334* ("Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits . . . ."); *Yantai Timken Co. v. United States, 31 CIT 1741, 1755, 521 F. Supp. 2d 1356, 1371 (2007)* ("In order for Commerce to fulfill its mandate to administer the antidumping duty law, including its obligation to calculate accurate dumping margins, its must be permitted to enforce the time frame provided in its regulations."). Furthermore, this Court has upheld Commerce's enforcement of its regulatory [*30] deadlines when it rejects new factual information submitted after the applicable deadline and subsequently applies AFA. *Hyosung Corp. v. United States, 35 CIT , Slip. Op. 2011-34 at *9-11 (Mar. 31, 2011)* (upholding Commerce's use of adverse inferences when the respondent failed to report that it did not have shipments of subject merchandise in response to a Q&V questionnaire); see also *Uniroyal Marine Exps. Ltd. v. United States, 33 CIT , 626 F. Supp. 2d 1312, 1316-17 (2009)*; *Yantai Timken, 31 CIT at 1755-56, 521 F. Supp. 2d* [**1267] *at 1371*; *Reiner Brach, 26 CIT at 559, 206 F. Supp. 2d at 1334*.

Nevertheless, Commerce's discretion in rejecting untimely information is not absolute. Rather, as the Court of Appeals has held, Commerce abuses its discretion when it refuses to consider untimely "corrective" information. *Timken U.S. Corp. v. United States, 434 F.3d 1345, 1353-54 (Fed. Cir. 2006)*; *NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208-09 (Fed. Cir. 1995)*. "[A] regulation which is not required by statute," such as the timeliness

2012 Ct. Intl. Trade LEXIS 115, *30; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1267

regulation, "may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." *NTN Bearing Corp., 74 F.3d at 1207.* [*31] In addition, when considering correction of an error at the preliminary results stage, the court "balance[s] the desire for accuracy . . . with the need for finality at the final results stage." *Timken, 434 F.3d at 1353-54.* When a respondent seeks to correct an error after the preliminary results but before the final results, this court may require Commerce to analyze the new information. See id. [16]

> 16  The Court of Appeals recently held in *PSC VSMPO-AVISMA v. United States, Appeal No. 2011-1370, -1395 at *17, 688 F.3d 751, 2012 U.S. App. LEXIS 15638 at *23*24 (Fed. Cir. July 27, 2012)* that "[t]he role of judicial review is limited to determining whether the record is adequate to support the administrative action. A court cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered." However, PSC VSMPO-AVISMA is distinguishable from the Court of Appeals' prior holdings in NTN Bearings and Timken. Whereas PSC VSMPO-AVISMA concerned submission of factual information to supplement the record, NTN Bearings and Timken concerned correction of errors at the preliminary results stage. We do not read PSC VSMPO-AVISMA's holding [*32] that the court should not interfere with the creation of the administrative record to be in tension with the court's responsibility to review Commerce's consideration of errors for abuse of discretion. Furthermore, in this case Commerce requested new factual information to supplement the record, so the concerns expressed in PSC VSMPO-AVISMA are not present.

When considering whether a rejection of untimely information amounts to an abuse of discretion, the court weighs the burden of accepting late submissions and the need for finality against the statute's goals of accuracy and fairness. See *Grobest & I-Mei Indus. (Vietnam) Co. v. United States, 36 CIT   , 815 F. Supp. 2d 1342, 1365 (2012); Fischer S.A. Comercio, Industria & Agricultura v. United States, 34 CIT   , 700 F. Supp. 2d 1364, 1375-77 (2010).* "Thus, while deferring to Commerce's necessary discretion to set and enforce its deadlines, the court will review on a case-by-case basis whether the interests of accuracy and fairness outweigh the burden placed on the Department and the interest in finality." *Grobest, 36 CIT at   , 815 F. Supp. 2d at 1365.* "Finality concerns only begin to counterbalance accuracy concerns when [Commerce] [*33] reaches the final results stage." *Fischer, 34 CIT at   , 700 F. Supp. 2d at 1375.*

In this case Commerce, following the Preliminary Determination and in response to Plaintiffs' ministerial error allegations, sought additional evidence in support of Plaintiffs' claims, which Plaintiffs subsequently placed on the record. Commerce's failure to take into account that evidence amounts to an abuse of discretion where, as here, the concerns for accuracy and fairness outweigh concerns of finality and agency burden. [17] Furthermore, Commerce's [**1268] failure to take into account evidence on the record that supported removing Elegant Living and Eswell Enterprise from the AFA list renders the determination unsupported by substantial evidence. *Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 95 L. Ed. 456 (1951)* ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

> 17  Because both the ministerial error allegations and the new record evidence occurred prior to the Final Determination, there are no significant finality concerns here. Nor does the relatively small amount of new record evidence to be considered present any concern with regard to agency burden. Cf. *Fischer, 34 CIT at   , 700 F. Supp. 2d at 1376-77.*

The record contains evidence that Elegant Living is a misidentification of Baroque Timber. The Samling Group put evidence on the record that Baroque Timber (1) uses "Elegant Living" as a trade name and brand, (2) resides at the address listed for Elegant Living, and (3) exports subject merchandise. Samling Allegatin at 2; Samling Narrative Resp. at 1-2. Furthermore, Samling Group submitted evidence demonstrating that no company with the exact name of Elegant Living Corporation exists within the company hierarchy. See Samling Resp. ex. B. [18]

> 18  The court notes that the exact same evidence led Commerce to remove Times Flooring from the AFA list. See I & D Mem. Cmt. 6 at 49.

Page 11

2012 Ct. Intl. Trade LEXIS 115, *34; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1268

In rejecting the evidence supporting Plaintiffs' claim, Commerce pointed to Samling's annual report to demonstrate the existence of several "Elegant Living" companies within Samling Group, notably a company in the PRC owned by Baroque Timber and named Shanghai Elegant Living Timber Products. I & D Mem. Cmt. 6 at 49. Commerce may be correct in asserting that because "Elegant Living" could have identified multiple companies separate from Baroque Timber, "additional Q&V [*35] Questionnaire responses should have been submitted, even if they indicated 'no exports.'" Id. However, such argument simply ignores the evidence indicating that the "Elegant Living" in the petition was Baroque Timber, as well as evidence that no actual Elegant Living Corporation exists. [19] Failure to take this evidence into account fails the substantial evidence test. If Commerce wishes to keep an "Elegant Living" company on the AFA list, the interests of accuracy and fairness demand that Commerce must either determine, based on substantial evidence, that Elegant Living Corporation does exist or determine what company within Samling Group, if any, failed to cooperate.

19  Commerce does not contend in its briefs that Elegant Living Corporation exists. In this sense, there is no dispute between the parties as to the existence of Elegant Living; rather they dispute the application of AFA. It is difficult to see how leaving Elegant Living on the AFA list serves any purpose when no such company exported or will export anything to the United States.

Commerce has a stronger case for including Eswell Enterprise, but not one which ultimately meets the substantial evidence standard. A determination [*36] of affiliation or collapsing falls to Commerce to decide and not to respondents in deciding what information to supply. Cf. *Reiner Brach, 26 CIT at 556-57, 206 F. Supp. 2d at 1331.* Moreover, the Q&V questionnaire clearly requested from the recipient, Eswell Enterprise, information regarding exportation of subject merchandise. Q&V Questionnaire, C-570-971, POI 09 (Dec. 3, 2010), Admin. R. Pt. 1 Pub. Doc. 90 Attach. 1. The accompanying letter also warned that failure to cooperate to the best of one's ability could result in the use of adverse inferences. Id. at 1. Thus, Eswell Enterprise could have simply responded with "no exports."

Had no further evidence regarding Eswell Enterprise been placed on the record, [**1269] our inquiry might end here. Cf. *Hyosung, 35 CIT at    , Slip. Op. 11-34 at *10-11.* However, unlike the facts of Hyosung, where Commerce rejected untimely new information, in this case Commerce sought and permitted Plaintiffs to place additional information on the record. This includes evidence indicating that Eswell Enterprise is the parent company of Eswell Timber and that Eswell Enterprise does not independently export subject merchandise.

Commerce may not request and subsequently [*37] ignore record evidence. As discussed above, Eswell Enterprises's failure to respond to the Q&V Questionnaire is not dispositive once a correction is requested and new evidence is placed on the record. Under these circumstances, Commerce must consider the evidence so long as the concerns for accuracy and fairness outweigh those for finality and agency burden -- which they do here -- and failure to consider the evidence renders a determination unsupported by substantial evidence.

Because the record contains evidence permitting Commerce to determine that Elegant Living and Eswell Enterprise were not companies that belonged on the AFA list and Commerce unjustifiably failed to take into account this evidence, the court finds Commerce's decision unsupported by substantial evidence and remands for reconsideration.

## CONCLUSION

In accordance with the foregoing opinion, the Final Determination, is affirmed, in part, and remanded, in part.

Commerce's decisions to use AFA in calculating the value of the LTAR subsidy and the inclusion of the BET in the Final Determination are affirmed. Commerce's inclusion of Elegant Living and Eswell Enterprises is remanded for reconsideration or further explanation [*38] consistent with this opinion.

Commerce shall have until October 30, 2012, to complete and file its remand redetermination. Plaintiffs and Defendant-Intervenors shall have until November 13, 2012, to file comments. Plaintiffs, Defendant, and Defendant-Intervenors shall have until November 27, 2012, to file any reply.

2012 Ct. Intl. Trade LEXIS 115, *38; ;
34 Int'l Trade Rep. (BNA) 1994; 865 F. Supp. 2d 1254, **1269

/s/ Donald C. Pogue

Donald C. Pogue, Chief Judge

Dated: August 31, 2012

New York, New York



FINE FURNITURE (SHANGHAI) LIMITED, et al., Plaintiffs, and HUNCHUN FOREST WOLF INDUSTRY COMPANY LIMITED, et al., Plaintiff-Intervenors, v. UNITED STATES, Defendant, and THE COALITION FOR AMERICAN HARDWOOD PARITY, Defendant-Intervenor.

Consol. Court No. 11-00533 [1]

1   This action was consolidated with portions of the complaints from Court Nos. 12-00009, 12-00017, and 12-00022. Order, Apr. 5, 2012, ECF No. 50.

UNITED STATES COURT OF INTERNATIONAL TRADE

*878 F. Supp. 2d 1328; 34 Int'l Trade Rep. (BNA) 2191; 2012 Ct. Intl. Trade LEXIS 140; SLIP OP. 2012-138*

November 15, 2012, Decided

**PRIOR HISTORY:** *Fine Furniture (Shanghai) Ltd. v. United States, 865 F. Supp. 2d 1254, 2012 Ct. Intl. Trade LEXIS 115 (2012)*

**JUDGES:** [**1] Before: Donald C. Pogue, Chief Judge.

**OPINION BY:** Donald C. Pogue

**OPINION**

[*1329] JUDGMENT

Whereas the United States Department of Commerce has filed its Final Results of Redetermination Pursuant to Court Remand, ECF No. 77, which was issued pursuant to the court's Aug. 31, 2012, opinion and order, Slip Op. 12-113, ECF No. 76; and Plaintiffs have filed their response thereto, ECF No. 80, in which Plaintiffs supported the Redetermination; and no other party having filed a response; and the court having reviewed all pleadings and papers on file herein; and good cause appearing therefor, it is hereby

ORDERED, ADJUDGED and DECREED that Multilayered Wood Flooring from the *People's Republic of China, 76 Fed. Reg. 64,313 (Dep't Commerce Oct. 18, 2011)* (final affirmative countervailing duty determination), as modified by the Final Results of Redetermination Pursuant to Court Remand, ECF No. 77, is AFFIRMED.

/s/ Donald C. Pogue

Donald C. Pogue, Chief Judge

878 F. Supp. 2d 1328, *1329; 34 Int'l Trade Rep. (BNA) 2191;
2012 Ct. Intl. Trade LEXIS 140, **1; SLIP OP. 2012-138

Dated: November 15, 2012

New York, New York

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2013, a copy of the foregoing Appellant's Brief was served on the following parties via electronic notice of docket activity.

| | |
|---|---|
| Alexander V. Sverdlov<br>**Department of Justice**<br>**Commercial Litigation Branch, Civil Division**<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, DC 20044<br>alexander.v.sverdlov@usdoj.gov | John Burt Totaro, Jr.<br>**Neville Peterson, LLP**<br>1400 16th Street, NW., Suite 350<br>Washington, DC 20036<br>jtotaro@npwdc.com |
| Francis J. Sailer<br>Mark Pardo<br>Andrew Thomas Schutz<br>Kavita Mohan<br>**Grunfeld Desiderio, Lebowitz,**<br>Silverman & Klestadt LLP, Suite 650<br>1201 New York Avenue, N.W.<br>Washington, DC 20005<br>fsailer@gdlsk.com<br>Mpardo@gdlsk.com<br>aschutz@gdlsk.com<br>kavita.mohan@gmail.com | Gregory S. Menegez<br>James Kevin Horgan<br>**DeKieffer & Horgan**<br>729 15th Street, N.W., Suite 800<br>Washington, DC 20005<br>khorgan@dhlaw.com<br>gmenegaz@dhlaw.com |
| Jeffrey S. Neeley<br>Stephen William Brophy<br>**Barnes, Richardson & Colburn**<br>11 Dupont Circle, N.W., Suite 500<br>Washington, DC 20036<br>jneeley@barnesrichardson.com<br>sbrophy@barnesrichardson.com | Jonathan M. Zielinski<br>**Department of Commerce**<br>**Office of the Chief Counsel for Import Administration**<br>1401 Constitution Avenue, N.W.<br>Washington, DC 20230<br>jonathan.zielinski@trade.gov |

/s/ Kristin H. Mowry
Kristin H. Mowry
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, DC 20015
202-688-3610 (ph)
202-595-8968 (f)
*Counsel to Fine Furniture (Shanghai) Limited, Great Wood (Tonghua) Ltd., and Fine Furniture Plantation (Shishou) Ltd.*

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. **This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).**

    ✓ **The brief contains 10,828 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or**

    ☐ **The brief uses a monospaced typeface and contains [state the number] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).**

2. **This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).**

    ✓ **The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman typeface.**

    ☐ **The brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].**


_____/s/ Kristin H. Mowry_____
Signature of Attorney

_____Kristin H. Mowry_____
Name of Attorney

_____Appellant_____
State whether representing appellant, appellee, etc.

_____March 15, 2013_____
Date